Dana Sherry **DARGENTO,**
et al., Plaintiffs,

v.

**BALLY'S HOLIDAY FITNESS
CENTERS, et al.,
Defendants.**

No. 96–CV–6090L.

United States District Court,
W.D. New York.

Dec. 11, 1997.

Michelle Anne Hutchinson, Brown & Hutchinson, Rochester, NY, for Plaintiffs.

Paul J. Yesawich, III, Harris, Beach & Wilcox, Rochester, NY, James C. Holahan, Rochester, NY, for Defendants.

### DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiffs Dana Sherry Dargento ("Dargento"), Bonnie Jean Bruno ("Bruno") and Susan L. Kryszak ("Kryszak") contend that they were victims of unlawful employment practices during their employment with defendant Bally's Holiday Fitness Centers ("Bally's").[1] Plaintiffs worked in various Bally's clubs in Rochester and Buffalo. All three contend that they were subjected to discrimination based on sex, were denied equal pay, were subjected to a hostile work

---

1. Two other named plaintiffs, Sandy Pursati and Veronica Sellitto, have settled their claims against Bally's. Therefore, the complaint as to them will be dismissed.

environment, were retaliated against for complaining about the discriminatory practices, and were ultimately constructively discharged. Kryszak also contends that she was subjected to discrimination due to her age. Plaintiffs contend that they were harassed by several co-employees; however, the primary offenders were two managers, Michael LaManna ("LaManna") and Patrick Fricano ("Fricano").

Dargento, Bruno and Kryszak each filed charges with the Equal Employment Opportunity Commission ("EEOC") in July 1995. This action was filed on February 28, 1996, after each plaintiff received a "Right To Sue" from the EEOC. Plaintiffs' federal complaint alleges violations under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., the Equal Pay Act, 29 U.S.C. § 206, et. seq., the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et. seq., and Article 15 of the New York Executive Law, § 296.[2]

On November 19, 1996, plaintiffs moved to amend their complaint to add New York State as a party plaintiff. On January 17, 1997, defendants moved: for judgment on the pleadings pursuant to the Federal Rules of Civil Procedure, Rule 12(c) and to stay resolution of plaintiffs' motion to amend.[3] Following oral argument on May 16, 1997, this Court dismissed plaintiffs' Title VII and Age Discrimination in Employment Act ("ADEA") claims against the individual defendants and directed that the claims proceed against the employer, the corporate defendant. Defendants' motion for judgment on the pleadings was converted to a motion for summary judgment pursuant to Rule 56.

For the reasons set forth below, defendants' motion for summary judgment is granted in part and denied in part.

## DISCUSSION

### I. Summary Judgment Standards

Summary judgment may not be granted unless there is no disputed material issue of fact and judgment in favor of the moving party is appropriate as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Gallo v. Prudential Residential Services Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir. 1994). Once the moving party has carried its burden to demonstrate that there is no evidence to support the nonmoving party's case, the nonmoving party must come forward, and by "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'" identify specific facts demonstrating the existence of a genuine issue for trial. *Celotex,* 477 U.S. at 324–25. Any "inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the [nonmoving] party" and any admissible facts asserted by the nonmoving party that are uncontroverted must be regarded as true. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

The Second Circuit has cautioned that special care should be taken when entertaining motions for summary judgment in discrimination cases where, as here, the employer's intent is at issue. *Gallo,* 22 F.3d at 1224. The rationale underlying this admonition is that direct evidence of intentional discrimination is rare and plaintiffs are more often forced to prove their case by circumstantial evidence. *Id.* Thus, "the trial court's task at ... [this] stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Id.*

### II. Contentions of the Parties

Defendants move to dismiss plaintiffs' federal complaint based on several alleged deficiencies in plaintiffs' EEOC filings and because much of the offensive conduct is barred

---

2. Dargento and Bruno's husbands each sought derivative relief for loss of consortium. These claims were dismissed by the Court on June 18, 1997.

3. By mutual consent, the parties have agreed to stay resolution of the motion to amend pending resolution of the current motion.

by the limitations periods prescribed by Title VII.

As a general rule, "[a] district court only has jurisdiction to hear Title VII claims that are either included in an EEOC charge or based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Housing Preservation and Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993) (citations omitted). As the *Butts* court noted, the "exhaustion requirement is an essential element of Title VII's statutory scheme," *Id.* Its purpose is to "encourage settlement of discrimination disputes through conciliation and voluntary compliance." *Id.*; *see also Stewart v. United States Immigration and Naturalization Service*, 762 F.2d 193, 198 (2d Cir.1985).

Defendants principally challenge the EEOC filings in two ways. First, defendants contend that the federal complaint lists claims not adequately set forth in the EEOC charges. Defendants assert that claims allegedly raised for the first time in the federal complaint must be dismissed. Second, defendants suggest that the EEOC charges as filed are much too vague and general to serve as predicates for allegations in the federal complaint.

Concerning the limitations issue, defendants contend that plaintiffs failed to file their EEOC charges within the required 300–day–time period set forth in 42 U.S.C. § 2000e–5(e). Plaintiffs concede that some acts did occur outside the required timeframe but contend that their claims are based on continuing and repetitive conduct by defendants and, therefore, the filings are timely under the well-recognized continuing violation principle.

### III. Scope of Plaintiffs' EEOC Charges Concerning Sexual Discrimination, Hostile Work Environment and Retaliation.

The general rule that a district court only has jurisdiction to hear Title VII claims that were included in an EEOC charge is well-recognized. The statutory framework requires EEOC filings, in part to encourage resolution of these disputes between the employer and the employee through the conciliation process attendant to the EEOC investigation. The EEOC filing requirement is not meant to be a rigid, technical one; such an interpretation would defeat the broad, remedial purpose of the anti-discrimination statutes. The question presented here, as is often the case, is whether the matters set forth in the federal complaint are reasonably related to those claims raised in the EEOC charge.

The Second Circuit has identified several situations where claims not alleged specifically in an EEOC charge are deemed to be sufficiently "related" to that charge to allow the district court to hear them. *Butts*, 990 F.2d at 1402–1403. In the first situation, the Second Circuit allows claims to be brought in a civil action "where the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Id.* at 1402 (citations omitted).

The Second Circuit has recognized another exception to the EEOC filing requirement. The district court may hear claims of discrimination not alleged in the EEOC charge where the alleged incidents of discrimination were "carried out in precisely the same manner alleged in the EEOC charge." *Id.* at 1403. Here, the relevant inquiry is "whether 'the EEOC would have had the opportunity to investigate, if not the particular discriminatory incident, the method of discrimination manifested in prior charged incidents.'" *Alfano v. Costello*, 940 F.Supp. 459, 469 (N.D.N.Y.1996) (quoting *Butts*, 990 F.2d at 1403).

Plaintiffs all allege in their EEOC charges several different actions which they contend violate the anti-discrimination provisions of Title VII of the Civil Rights Act. All three plaintiffs allege that they were subjected to "sexual harassment and sexual discrimination" to such an extent as to create a hostile work environment. They also claim that they, and other women, were denied employment opportunities and promotions because of their gender. In addition, plaintiffs contend that they were retaliated against after complaining about the sexual harassment and deprivation of benefits and that their situation became so intolerable that they were all

forced to leave their employment and were, therefore, constructively discharged.

The EEOC charges filed by the three plaintiffs are strikingly similar and appear to have been prepared with the assistance of counsel. Although all three charges tend to be phrased in general terms, I believe that, in the context of these cases, the EEOC filings are sufficiently precise to alert both the employer and the EEOC to the nature of the complained of matters.

The EEOC charges state quite clearly the nature of the sexual harassment and humiliation suffered and each plaintiff references certain specific examples of offensive conduct. The gist of the EEOC charges is that there was a pervasive, continuing atmosphere of sexual misconduct by Bally's managers, specifically LaManna and Fricano.

There was little mystery as to the nature of the plaintiffs' charges and each charge set forth some very graphic instances of reprehensible conduct by defendant's managers. For example, plaintiff Dargento, in addition to her general allegations, sets forth several specific instances of discriminatory conduct. She stated that she was subjected to constant verbal attacks based on her gender, such as "you suck; all women suck," and "you are too emotional." (Dargento EEOC Charge at p. 3, ¶ 7). Fricano allegedly demanded that she either work longer hours or be demoted, and commented that "[i]t was your choice to get married" and "[y]ou are probably going to have a kid soon anyway." (Dargento EEOC Charge at p. 3, ¶ 7). In addition, Dargento cites an incident where she personally was a victim of offensive sexual harassment. She contends that she was degraded and humiliated when she walked into a staff meeting and found a picture of her face pasted on a nude centerfold (performing oral sex) which had been placed on the wall of the meeting room. (Dargento EEOC Charge at p. 4, ¶ 8).

Dargento contended that all of the practices described by her were tolerated, encouraged or perpetrated by supervisors at Bally's, including LaManna and Fricano. She also contended that she reported her complaints and concerns to a specific individual in the Human Resources Department at Bally's, but her complaints were either ignored, or minimized, and that no significant action was taken to rectify the situation. (Dargento EEOC Charge at p. 4, ¶ 9).

Plaintiff Bruno also set forth both general and specific allegations in her EEOC charge. She alleged that she was denied promotions and other employment preferences on account of her gender. Specifically, she alleged that two male employees with less experience and fewer qualifications were promoted to General Manager and Area Manager in Buffalo and that she was not considered for the job in April 1995. (Bruno EEOC Charge at pp. 3–4, ¶ 9).

Bruno also described an atmosphere of sexual harassment and tension. She charged that she was constantly subjected to discriminatory verbal attacks and specifically alleged an incident where a male employee grabbed her buttocks in front of her brother and uncle, who happened to be visiting the club at the time. Bruno contended, as did Dargento, that LaManna had been charged with sexual harassment by several different female employees and that on one occasion he had exposed his penis to a female employee.[4] (Bruno EEOC Charge at p. 4, ¶¶ 10–11).

Like Dargento, Bruno states that female employees were constantly subjected to physical sexual harassment, including fondling and unwanted sexual advances, and that it was "common knowledge" that submitting to those advances would "insure job opportunities." (Bruno EEOC Charge at p. 4, ¶ 12). This harassment was carried out, encouraged and tolerated by both LaManna and Fricano, and no remedial action was taken by Bally's concerning the complaints of the women.

Plaintiff Kryszak contended in her EEOC charge that she had been denied promotions on account of her gender in both 1992 and

4. Although not part of the EEOC charges, I note that in opposing the pending motion to dismiss, plaintiff submitted the declaration of a former Bally's employee, Kerry Marshal, in which she states that she was sexually assaulted by LaManna during the relevant time period. She states that she immediately reported this instance to the Webster Police Department and that LaManna later pleaded guilty to a lesser criminal charge.

1993. She contends that two less experienced males received the positions. One of the promotions would have required traveling and she alleged that the position was denied her because she had two small children. (Kryszak EEOC Charge at pp. 3–4, ¶¶ 9–11).

Although there appears to have been no specific unwanted touching or harassment of Kryszak, she echoed the allegations made by both Dargento and Bruno regarding the pervasive atmosphere which tolerated unwanted touching and sexual advances. (Kryszak EEOC Charge at p. 5, ¶¶ 13–14).

All three plaintiffs have also alleged instances of retaliation in their EEOC charges. Concerning retaliation, Dargento claims that because she opposed the discriminatory practices, she was faced with increasing harassment, verbal abuse, humiliation, intimidation and threats on a daily basis. Bruno also claims that after she complained, she was verbally harassed and forced to move from Buffalo to Rochester as a device to force her to resign.

Although the charges concerning hostile environment and retaliation are somewhat general, I believe that they are sufficiently specific in light of the context of this case. The charges are sufficient to provide for a meaningful EEOC response and certainly are ample enough to define the scope of the EEOC investigation.

Although I do believe that each of the EEOC charges is sufficient concerning hostile work environment and retaliation when considered separately, when considered together and in light of the other complaints that were filed at the same time by other women, these charges are even more compelling.

At virtually the same time, the EEOC received lengthy EEOC charges from these three plaintiffs as well as from the other original plaintiffs in this case, Pursati and Sellitto. The picture of Bally's work environment painted by all of these complaints was hardly vague or ambiguous.

The purpose of the exhaustion-of-remedies requirement is to provide notice to the employer of the alleged discriminatory conduct and to encourage conciliation by the EEOC. *Butts,* 990 F.2d at 1401; *Adames v. Mitsubishi Bank Ltd.,* 751 F.Supp. 1565, 1570 (E.D.N.Y.1990). With these goals in mind, it would be patently unfair to allow a plaintiff to litigate a claim neither presented to nor investigated by the EEOC. *Butts,* 990 F.2d at 1401. However, this is not a case in which the plaintiffs have attempted to side-step mandatory notice requirements. To the contrary, both Bally's and the EEOC received notice of the employees' specific charges and were thus aware of the potential scope of any resulting investigation. Accordingly, the allegations in plaintiffs' federal complaint cannot be said to have "caught the EEOC [or Bally's] by surprise." *See Virgo v. Local Union 580,* 107 F.R.D. 84, 89 (S.D.N.Y.1985) (since the EEOC had begun investigation of alleged discriminatory union referral system, allegation of plaintiff made for the first time in his federal complaint that system discriminated against him personally was within the scope of the EEOC investigation that naturally evolved from the original charge of discrimination).

Furthermore, because of the several, joint complaints about pervasive discriminatory practices, it is certainly not unreasonable to conclude that any investigation by the EEOC would have included an inquiry into all aspects of the charges brought by these three plaintiffs and the other women, including hostile work environment, harassment, denial of benefits, and retaliation. *See, e.g., Peterson v. Insurance Co. of North America,* 884 F.Supp. 107, 111 (S.D.N.Y.1995) (promotion denial claim was "logical extension" of EEOC charge as a whole); *Minetos v. City University of New York,* 875 F.Supp. 1046, 1052 (S.D.N.Y.1995) (where facts show that the EEOC was alerted to a possible discrimination claim, although not specifically alleged in EEOC charge, discrimination claim in federal complaint will not be dismissed for failure to exhaust remedies); *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 399 (3d Cir.1976) (where EEOC received two charges of discrimination against employer by plaintiff while investigating prior similar charge against same employer, district court had jurisdiction to hear plaintiff's federal suit

which "encompassed all the instances of discrimination").

It is a somewhat analogous context, plaintiffs in class action discrimination suits have been allowed to "piggyback" their otherwise untimely claims on to those of timely filed named plaintiffs. *See Snell v. Suffolk County,* 782 F.2d 1094, 1101–02 (2d Cir. 1986); *Tolliver v. Xerox Corp.,* 918 F.2d 1052, 1057 (2d Cir.1990) (extending "single filing rule" to ADEA cases). Thus, a plaintiff who has never filed an EEOC charge, and therefore has never given notice to either the employer or the EEOC, can still litigate his or her claims so long as they fall within the scope of the timely filed claims. *See Snell,* 782 F.2d at 1100–1101.

In *Snell,* a racial discrimination case, the Second Circuit held that the "principle function of the filing requirements—notice and an opportunity for conciliation—had been satisfied" by the timely filing of the named plaintiffs. *Id.* at 1101. The court explained further:

> The evidence adduced at trial clearly indicated that the minority officers were subjected to a virtual barrage of racially offensive slurs and demeaning epithets that directly affected their work. All these incidents were of a similar nature and occurred at the Suffolk County Correction Facility within a three-year period. Moreover, the EEOC filings put Suffolk County on notice of 'discrimination like or reasonably growing out of such allegations.' (Citations omitted.) An investigation by the EEOC would certainly have revealed this evidence of pervasive racial hostility.

*Id.* at 1101. *See also Tolliver,* 918 F.2d at 1059 (once the named plaintiffs filed their charges, the EEOC was "on notice" that Xerox allegedly reduced its workforce through discriminatory means).

It is well-settled that, in determining whether a claim not alleged in an EEOC charge is nevertheless "reasonably related," the district court should not look "merely to the four corners of the often inarticulately framed charge," but must consider the possible scope of any investigation reasonably flowing from the charge. *Gomes v. Avco*

*Corp.,* 964 F.2d 1330, 1334 (2d Cir.1992) (quoting *Silver v. Mohasco Corp.,* 602 F.2d 1083, 1090 (2d Cir.1979), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980)). Moreover, claims may still be considered "reasonably related" even if the EEOC did not investigate the charge, so long as it had the opportunity to do so. *See Otterbacher v. Northwestern University,* 838 F.Supp. 1256, 1260 (N.D.Ill.1993) (citing *Babrocky v. Jewel Food Co. and Retail Meatcutters Union,* 773 F.2d 857, 864 n. 2 (7th Cir.1985)); *Forehand. v. Florida State Hosp. at Chattahoochee,* 839 F.Supp. 807, 819 (N.D.Fla.1993). Notwithstanding *Butts* admonition against vague, nonspecific allegations serving as a predicate for a civil action, the focus in determining whether the allegations of a federal complaint are "reasonably related" to those contained in the EEOC charge remains on the facts giving rise to the claim of discrimination. *See, e.g., Bridges v. Eastman Kodak Co.,* 822 F.Supp. 1020, 1026–1027 (S.D.N.Y.1993) (allegations of hostile work environment contained in EEOC charge alerted EEOC to possible *quid pro quo* claim).

In the instant case, the EEOC was presented with five charges of similar, if not identical forms of discrimination against the same employer, in the same locations, perpetrated by the same managers. Accordingly, the EEOC had before it a sufficient factual basis to conclude that the discriminatory practices at Bally's were both widespread and varied in form.

## IV. Federal Complaint: Scope of Title VII Claims

Defendants contend that the complaint, or portions of it, must be dismissed because some items mentioned there were not alleged in the EEOC charges.

I believe that defendants miss the mark here, for several reasons. I believe that the matters set forth in each of plaintiffs' complaints concerning Title VII are "reasonably related" to the allegations in the EEOC charges. *Butts,* of course, recognized several instances where matters not specifically set forth in the EEOC charge could be pursued in district court because the matters pleaded in the complaint were sufficiently related to

the matters that had been alleged in the EEOC filing. *Butts,* 990 F.2d at 1402–1403. If the matters alleged in the federal complaint are reasonably related to what was charged in the EEOC complaint, then the district court has jurisdiction to hear them.

Two of the exceptions or examples discussed by *Butts* apply here. First of all, for the reasons discussed *infra,* it seems evident that the conduct complained of in the federal complaint would have fallen within the ambit of the EEOC investigation prompted by the EEOC charges. Because of the contemporaneous EEOC filings, the disgusting nature of many of the allegations and the charge that the sexual conduct and harassment was continuous and pervasive, it is not unreasonable to conclude that the EEOC investigation would have been quite detailed and thorough concerning all matters relating to the stated EEOC charges. *Butts* allows for federal court jurisdiction in such circumstances. *Butts,* 990 F.2d at 1402.

*Butts* also recognized another instance where matters not specifically mentioned in the EEOC charge could, nonetheless, be heard as a part of a subsequent federal complaint. This further example of when a matter is "reasonably related" to the matters set forth in the EEOC charge applies in the instant case. Where plaintiff alleges in a federal complaint "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge" a federal court retains jurisdiction and may hear the claims. *Butts,* 990 F.2d at 1402–1403.

In part, that is the nature of plaintiffs' complaint here. For example, Dargento's federal complaint provides more examples of the abusive language allegedly used by LaManna and Fricano. Dargento's failure to list every single verbal assault in her EEOC charge is not fatal to her federal complaint because that conduct clearly falls within the scope of the EEOC investigation which could reasonably be expected to grow out of the original charge of discrimination before the EEOC. Although Dargento includes more details in her federal complaint concerning the alleged retaliatory conduct, the complaint merely flushes out that which was referenced in the EEOC charge. For example, in her

federal complaint, Dargento states that in December 1994, she wrote a letter to Janice Cahill of Bally's Human Resources Department, complaining of the harassment and discrimination. Before she sent the letter, she allegedly showed it to LaManna in the hope that they might be able to reach some amicable solution. Dargento contends that LaManna told her that if she ever sent the letter, "he would make sure that she was demoted." (Complaint at p. 16, ¶ 60). Dargento alleges that despite this threat, she sent the letter to Cahill, but her complaint was ignored and she did in fact suffer acts of retaliation by LaManna.

Likewise, Bruno's federal complaint provides more detail about what was raised in the EEOC charge. For example, Bruno provides more detail regarding the buttocks-slapping incident in the federal complaint. In addition, she alleges that the same supervisor who touched her buttocks was later accused by another female employee of rape. Bruno adds in the federal complaint that the offending supervisor was never punished by Bally's; he was simply transferred to another club, which Bruno claims was the standard procedure for dealing with complaints of sexual harassment. Although the federal complaint does provide more detail, it appears that the scope of any EEOC investigation of the "buttocks" incident and the company's response to that incident would have encompassed the entire incident.

Admittedly, some of Bruno's allegations in the federal complaint were never mentioned specifically in the EEOC charge. For example, Bruno contends on one occasion that she complained to LaManna that she did not believe that her immediate supervisor at the time, Robert Miller, was adequately performing his job. She alleges that LaManna sent her a plaque admonishing her that "every time you point a finger, three point back at you," and insisted that the plaque be hung in her office. (Complaint at p. 23, ¶ 91).

Bruno also describes an incident where LaManna yelled at her in his office for approximately six hours because she had called payroll to inquire about a discrepancy in her paycheck. Presumably, these incidents are offered in support of her hostile work envi-

ronment claim. Because the EEOC charges filed by all plaintiffs paint a picture of a working environment permeated with hostility, both sexual and gender based, it is likely that the EEOC's investigation of the working environment at Bally's would have included the incidents described in Bruno's federal complaint.

In conclusion, I believe that all of the conduct alleged in the federal complaint concerning the Title VII claims is reasonably related to the charges set forth in the EEOC complaints. Therefore, defendants' motion to dismiss the Title VII claims must be denied.

### V. Equal Pay Act

In the federal complaint, plaintiffs Dargento and Bruno allege violations of the Equal Pay Act, 29 U.S.C. § 206 *et seq.* The EEOC charges concerning the alleged denial of equal pay contain only the bare accusation of the claim, however. For example, Dargento's EEOC charge contains only a bare, conclusory allegation, unsupported by any facts, that she was denied "equal pay." Bruno's charge is similar.

Although I recognize that the EEOC investigation prompted by the hostile environment and sexual harassment claims would be broad, I think that an EEOC charge with only the bare assertion that the complainant was denied equal pay is deficient and cannot form the predicate for a later federal complaint. *Butts* specifically warned that vague, conclusory assertions in an EEOC charge will not be sufficient.

> Were we to permit such vague, general allegations, quite incapable of inviting a meaningful EEOC response, to define the scope of the EEOC investigation and thereby predicate subsequent claims in the federal lawsuit, such allegations would become routine boilerplate and Title VII's investigatory and mediation goals would be defeated.

*Butts,* 990 F.2d at 1403.

Not only are the EEOC charges vague, general and unsupported by any facts, the complaint concerning both Dargento's and Bruno's equal pay claims is equally vague and general concerning the nature of the claimed deprivation of equal pay. Under these circumstances, I am compelled to grant defendants' motion to dismiss the Equal Pay Act claims in the complaint as to both Dargento and Bruno.

### VI. Age Discrimination

Plaintiff Kryszak also alleges discrimination on account of age. Kryszak's age discrimination claim must be dismissed for several reasons. First of all, the EEOC charge on this claim is much too vague and general to suffice as a predicate for an age claim in the federal complaint.

Kryszak's EEOC charge does speak principally to sex and gender discrimination and harassment. Although she alludes to a claim for age discrimination, no specifics are given except that she makes one reference to the fact that she was sometimes referred to as "old" or an "old dog." Neither the EEOC charge nor the complaint concerning age discrimination mentions or discusses how Kryszak suffered in her employment on account of age. In fact, in the federal complaint there is no factual discussion at all of her claim concerning age. (Complaint, ¶ 129–151).

One reference in the EEOC charge to being called an "old dog" is not sufficient to set forth an age discrimination claim. One single reference like this is not enough. The EEOC charge filed by Kryszak is much too vague and general under *Butts* to act as a predicate to a later federal complaint.

Another reason for the dismissal is that plaintiff was not in the protective class (at least 40 years old) when the age-related events occurred. Plaintiff was 40 when the EEOC charge was filed in 1995. She had started her employment with Bally's in 1981, when she was 27. Some of the events that she complains of occurred in 1992 and 1993 when she was 38 and 39 years old. It appears that the matters complained of occurred when she was not in the protected class. This analysis is somewhat difficult because neither the EEOC charge nor the complaint sets forth with any specificity the job related actions that occurred (or failed to occur) on account of her age. Nevertheless, it appears from the nature of her complaint

that the matters complained of occurred well before she became 40 and within the protected class. It is true that she was 40 when she left her employment, but it is evident that her leaving was not caused by ageist remarks but by the sexual atmosphere pervading Bally's.

## VII. The Timeliness of Plaintiffs' Claims

 Defendants contend that much if not all of the conduct set forth in plaintiffs' complaint is barred by the limitations period prescribed by Title VII. *See* 42 U.S.C. § 2000e-5(e) (plaintiff required to file charge with EEOC within 300 days of the alleged discriminatory acts). Plaintiffs contend, however, that their claims are timely under a continuing violation theory.

 As a preliminary matter, I note that as a general rule, the courts of this circuit do not favor continuing violation arguments. *See Lloyd v. WABC–TV,* 879 F.Supp. 394, 399 (S.D.N.Y.1995); *Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408, 1415 (S.D.N.Y.1989). "Indeed, only 'compelling circumstances' will warrant application of the exception to the statute of limitations." *Blesedell,* 708 F.Supp. at 1415 (citation omitted).

 Nonetheless, the Second Circuit has held that "a continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). Thus, "[w]here a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period." *Id.*

 All three plaintiffs contend that they were subjected to a hostile work environment due to their sex. By its very nature, a hostile work environment claim "involves an ongoing course of conduct rather than a single discrete act." *See Anthony v. County of*

*Sacramento,* 898 F.Supp. 1435, 1443 (E.D.Cal.1995).

Similarly, each plaintiff contends that Bally's maintained policies or practices which discriminated against them on the basis of their sex. These alleged practices included favoring male employees over female employees and engaging in a persistent course of conduct involving sexual harassment. Each of these allegations involve an ongoing course of conduct.

 Plaintiffs do have the burden of proof to show a continuing violation to get the claims for discrimination that occurred more than 300 days before the EEOC filings to trial before this Court. At this stage of the litigation it is premature to rule definitively on whether all of plaintiffs' claims are timely or, if not, are covered under the continuing violation theory. At this stage, I cannot say that under no circumstance could plaintiffs establish what is necessary to show a continuous pattern of discrimination. The plaintiffs should be entitled, however, to engage in discovery to develop facts necessary to determine whether these claims are viable. *Williams v. Borough of Manhattan Community College,* 1995 WL 495499 (S.D.N.Y. August 18, 1995). There has been no discovery in this case. Both sides should have the opportunity through discovery to develop the necessary facts to determine whether there was indeed a pattern of discriminatory conduct or whether the incidents merely involved discreet acts of discrimination.

Because of the nature of plaintiffs' claims and the fact that there has been no discovery, summary judgment on the timeliness issue must be denied. *Morgan v. Pitney Bowes, Inc.,* 1994 WL 30938 (D.Conn., January 26, 1994). There is "sufficient dispute and ambiguity on the facts concerning this issue to defeat a motion for summary judgment." *McNeil v. Aguilos,* 831 F.Supp. 1079, 1083 (S.D.N.Y.1993).

## CONCLUSION

Defendants' motion for summary judgment is denied in part and granted in part as follows: Summary judgment is granted in favor of defendants on the Equal Pay Act

claims of plaintiffs Dargento and Bruno and summary judgment is also granted in favor of defendants on the Age Discrimination in Employment Act claim of plaintiff Kryszak.

In all other respects, defendants' motion for summary judgment is denied.

IT IS SO ORDERED.