Kathryn BRENNAN, Plaintiff,

v.

BALLY TOTAL FITNESS, Defendant.

No. 01 CIV. 0533(SAS).

United States District Court,
S.D. New York.

July 16, 2001.

Mona C. Engel, Law Offices of Robert F. Danzi, Westbury, NY, for Plaintiff.

Jed L. Marcus, Gotta, Glassman & Hoffman, P.A., Roseland, NJ, for Defendant.

### *OPINION AND ORDER*

SCHEINDLIN, District Judge.

Kathryn Brennan brings this civil rights action against her former employer, Bally Total Fitness Corp. ("Bally"), pursuant to Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e *et seq.,* and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 1201 *et seq.,* alleging that she was the victim of sexual harassment and disability discrimination. Bally now moves to dismiss the Complaint and to compel arbitration in accordance with the provisions of its arbitration agreement, the Employee Dispute Resolution Procedure ("EDRP"), and Sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3 and 4. Bally also argues that the Title VII action is untimely. For the reasons set forth below, Bally's motion is denied pending further discovery.

## I. FACTUAL BACKGROUND

Brennan began working for Bally in January 1996. *See* Complaint ("Compl.") ¶ 8. Due to a pattern of harassment and discrimination, Brennan was forced to quit her job in August 2000. *See id.* ¶ 32. On August 19, 2000, Brennan filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *See id.* ¶ 33. On January 8, 2001, the EEOC issued Brennan a Right–to–Sue Letter. *See id.* This action was commenced two weeks later.

### A. The Original EDRP

In December 1998, while employed at Bally, Brennan received a fax requesting that she and her co-workers attend an educational meeting about sexual harassment. *See* Affidavit of Kathryn Brennan ("Brennan Aff.") ¶ 8. The meeting was run by Fred Infante, the head of Bally's Human Resources Department for the New York Region. *See id.* On December 17, 1998, Brennan attended this "training session", *id.* ¶ 9, where the employees were shown a video depicting incidents of sexual harassment. *See id.*

As soon as the video ended, Infante distributed a lengthy document, the EDRP, which he described as containing procedures for bringing employment discrimination claims.[1] *See id.* Infante told the employees to quickly review the EDRP, sign it and return it. *See id.* When someone asked what would happen if the EDRP were not signed and returned, Infante responded that anyone who did not sign the EDRP would not be considered for promotions. *See id.* ¶ 10.

At that time, Infante left the room for several minutes to make a telephone call. *See id.* ¶ 11. After Infante returned, he collected the EDRPs, checking aloud that each one was signed before accepting it. *See id.* Infante never discussed the contents of the EDRP or indicated why the employees had to sign it. *See id.* ¶ 12. Further, Infante neither offered the employees a sufficient opportunity to review the EDRP, nor recommended that the employees show the document to an attorney before signing it. *See id.* ¶ 11. Worried about losing her job, Brennan promptly signed and returned the EDRP. *See id.* Brennan maintains that she did not understand the legal significance of the document, nor was she told that the EDRP would effect her pending complaint against her previous supervisor.[2] *See id.* ¶¶ 15–16. Brennan claims that had she known that

---

1. The original EDRP is attached as Exhibit 1 to the Certification of Fred Infante ("Infante Cert.").

2. Brennan alleges that Manager Mike Senal subjected her to sexual harassment beginning in or around November 1997. *See id.* ¶ 13. After she notified the appropriate person, Bally took no action against Senal or to protect Brennan. *See id.* ¶ 16. In order to avoid Senal, Brennan transferred to Bally Little Neck in Queens, which required a demotion, pay cut, and extra travel time and expenses. *See id.* ¶ 17.

the EDRP would effect her pending complaint, she would not have signed it. *See id.* ¶ 16.

Since the time Brennan signed the EDRP, Bally has twice unilaterally modified it. *See* Infante Cert. ¶ 10. The first modification, EDRP I, occurred in March 1999, and the second, EDRP II, occurred in December 1999. *See id.* The essential differences between EDRP I and the original EDRP are that Section 16.1 [3] was modified, a new clause, Section 6.6,[4] was added and Section 1.4 [5] was deleted from the original EDRP. The essential differences between EDRP I and EDRP II are that Sections 3.1,[6] 16.1,[7] and 24.3 [8] in EDRP II were modified and new Sections 6.8 [9] and 8.6 [10] of EDRP II were added. Brennan has no recollection of ever being notified of

3. "Each Party shall bear one-half the reasonable expenses of the arbitration, **except that this provision shall not apply to the Employee in circumstances where the Employee asserts a statutory anti-discrimination claim based on State or Federal law.**" Section 16.1 of EDRP I, Ex. 3 of Infante Cert. (modifications in bold).

4. "Based on this EDRP, the Employer also reserves the right to initiate a claim involving a Dispute with the Employee. Based on such election by the Employer, the Employee shall be given written notice stating in detail the nature of the Employer's claim. This notice must be postmarked within the time limit set forth in Paragraph 4.1. Within thirty (30) calender days of the Employer forwarding such written notice to initiate this EDRP, the Employer and Employee shall hold an in-person meeting in an attempt to informally resolve the Dispute." Section 6.6 of EDRP I, Ex. 3 of Infante Cert.

5. "Should the EEOC or other administrative agency initiate any action with respect to any Covered Dispute, Employee waives any right to individual damages or other relief as a result of such action, as Employee's right to damages or other relief, if any, shall be determined solely under this EDRP." Section 1.4 of EDRP, Ex. 1 of Infante Cert.

6. "The Employer will give a copy of this EDRP to the Employee a) at the time the Employee makes application for employment, b) for current employees, as soon as this EDRP is adopted by the Employer, or c) at any time, upon Employer's receipt of a written request for a copy of this EDRP from Employee. **Further, the Employer immediately shall post at all affected Bally facilities any amended EDRP, and any affected Employee will be provided with a copy of the EDRP upon Employer's receipt of a written request for a copy of the amended EDRP.**"

Section 3.1 of EDRP II, Ex. 4 of Infante Cert. (modifications in bold).

7. "Each party shall bear one-half the reasonable expenses of the arbitration, except in circumstances in which the Dispute by the Employee involves a claim in which the Employee asserts a statutory anti-discrimination claim based on State or Federal law, **the Employer shall be solely responsible for the expenses of the arbitration (other than Employee's attorneys' fees, if any, and personal expenses of the Employee, including the expenses of any Employee witnesses).**" Section 16.1 of EDRP II, Ex. 4 of Infante Cert. (modifications in bold).

8. "**Except as otherwise set forth herein,** this EDRP can be modified or revoked only by a writing, signed by both the Employee and the president or a representative of the Employer specifically set forth in Article 6.1., that references this EDRP and specifically states an intent to modify or revoke this EDRP." Section 24.3 of EDRP II, Ex. 4 of Infante Cert. (modifications in bold).

9. "Except as otherwise provided in this EDRP, any mediation shall be in accordance with the Rules for the Resolution of Employment Disputes of the American Arbitration Association (AAA) in effect at the time of receipt from the other party of written notice of the Dispute." Section 6.8 of EDRP II, Ex. 4 of Infante Cert.

10. "Except as otherwise provided in the EDRP, any arbitration shall be in accordance with the Rules for the Resolution of Employment Disputes of the American Arbitration Association (AAA) in effect at the time of receipt from the other party of written notice of the Dispute." Section 8.6 of EDRP II, Ex. 4 of Infante Cert.

or receiving copies of these modifications. *See* Brennan Aff. ¶ 14.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is proper only where " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim that would entitle [her] to relief.' " *ICOM Holding, Inc. v. MCI Worldcom, Inc.*, 238 F.3d 219, 220 (2d Cir.2001) (quoting *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999)). To properly rule on a 12(b)(6) motion, the court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the nonmoving party's favor. *See ICOM Holding*, 238 F.3d 219, 220.

### B. Jurisdictional Challenge

A plaintiff's initial burden in defeating a jurisdictional challenge "is dependent upon the procedural posture of the litigation." *Orobia Eng. S.R.L. v. Sorin Nacht*, No. 97 Civ. 4912, 1998 WL 730562, at *2 (S.D.N.Y. Oct. 19, 1998). Although "a plaintiff bears the burden of establishing jurisdiction over the defendant by a preponderance of the evidence, the plaintiff need make only a prima facie showing that jurisdiction exists prior to the holding of an evidentiary hearing." *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 196 (2d Cir.1990).

In determining whether such a showing is satisfied, a district court may look at materials other than those contained within the complaint. *See LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999) ("[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."). Appropriate circumstances for holding a hearing exist when the "proffered evidence is so conflicting and the record is rife with contradictions." *Foster–Miller Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995); *see also Cheyenne Autumn Inc. v. Mine and Bill's*, No. 94 Civ. 4011, 1995 WL 366388, at *2–4 (S.D.N.Y. June 19, 1995) (evidentiary hearing warranted where the jurisdictional issue turned on which version of the facts the court should accept). Although a court must dismiss a case if it does not have jurisdiction, *see Ruhrgas A.G. v. Marathon Oil Co.*, 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999), "a district court deciding [such a motion] 'has considerable procedural leeway.' " *Orobia Eng.*, 1998 WL 730562, at *2 (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981)).

## III. DISCUSSION

### A. Statute of Limitations

Title VII requires a plaintiff to file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment action or, if the plaintiff has already filed the charge with a state or local equal employment agency, within 300 days of the alleged act of discrimination. *See* 42 U.S.C. § 2000e–2(a)(1). Here, plaintiff filed a charge with the EEOC on August 19, 2000. *See* Compl. ¶ 33. Bally thus argues that because plaintiff is limited to acts of discrimination occurring after October 20, 1999, her Title VII action is untimely and must be dismissed. *See* Defendant's Memorandum of Law in Reply to Plaintiff's Opposition and Cross–Motion to Defendant's Motion to Dismiss Plaintiff's Complaint and Compel Arbitration ("Reply Mem.") at 8. Plaintiff responds that she has alleged a hostile work environment that has existed up until August 2000. *See* Plaintiff's Sur–Reply Memorandum of Law

in Opposition to Defendant's Motion to Dismiss on Statute of Limitations. Plaintiff also states that she has alleged discriminatory acts that occurred within the 300–day period, thus making dismissal improper.[11]

■ A claim of hostile work environment does not presuppose a continuing violation. *See Bampoe v. Coach Stores, Inc.,* 93 F.Supp.2d 360, 364 (S.D.N.Y.2000) ("[H]ostile work environment claims fare no differently under 'continuing violation' analysis than do other claims grounded in Title VII."). Accordingly, plaintiff is limited to post-October 20, 1999 acts of discrimination unless she can prove a continuing violation on Bally's part.

■ The continuing-violation exception " 'extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations.' " *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir.1998) (quoting *Annis v. County of Westchester,* 136 F.3d 239, 246 (2d Cir.1998)). "A continuing violation may be found where there is proof of specific ongoing discriminatory polices [sic] or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). "Where a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period." [12] *Id.*

■ Plaintiff alleges that several times she complained of harassment to Bally superiors who took no corrective action. *See* Compl. ¶¶ 10, 16, 20. Plaintiff also alleges that Bally had actual knowledge of the hostile work environment in each of its clubs and promoted sexual harassment through its policies of hiring and training managers. *See id.* ¶ 28. At this stage of the litigation, plaintiff's allegations must be presumed true. Accordingly, plaintiff has alleged sufficient facts to support the application of the continuing-violation exception.[13] Plaintiff's sexual harassment claims

---

11. The harassment plaintiff suffered dates back to January of 1996 and spans a number of Bally clubs. Plaintiff transferred to Bally's Bensonhurst club in August of 1998 where she worked under General Manager Darin Acetulli. *See* Compl. ¶ 20. Apart from Acetulli creating a hostile work environment in general, plaintiff's only other allegation that would fall within the 300–day period is a claim of retaliation by Acetulli in response to plaintiff's request for a transfer made in January of 2000. *See id.* ¶¶ 29–31. However, plaintiff does allege earlier harassment at the hands of other Bally supervisors. *See id.* ¶¶ 8–9 (harassment from Bally Manager Eddie Moree from January 29, 1996 through October 31, 1996), ¶ 13 (harassment from Bally Manager Mike Senal beginning in November of 1997).

12. It should be noted that the continuing-violation exception is not favored in this Circuit. *See, e.g., Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993) ("[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation.").

13. Based on her allegations, plaintiff has earned the opportunity to conduct discovery in order to determine whether she can make the necessary showing of a policy or practice of harassment and discrimination. *See Dargento v. Bally's Holiday Fitness Ctr.,* 990 F.Supp. 186, 196 (W.D.N.Y.1997) ("Both sides should have the opportunity through discovery to develop the necessary facts to determine whether there was indeed a pattern of discriminatory conduct or whether the incidents merely involved discreet acts of discrimination.").

will therefore not be dismissed as time-barred.

## B. Enforcement of the EDRP

 The FAA provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In deciding whether to compel arbitration, a district court must first determine whether a valid agreement to arbitrate exists. *See Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 225–26 (2d Cir.2001). Bally argues that any "claims [concerning] the formation of the arbitration agreement ... must be [decided] by the arbitrator, not this Court." Reply Mem. at 3. In support of this proposition, Bally relies on the Supreme Court's decision in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

### 1. *Prima Paint*

In *Prima Paint Corp.*, the Supreme Court held that a challenge to the making of a contract generally, as opposed to the making of an arbitration provision specifi-

cally, must be decided by the arbitrator. The Court held that "arbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded, and that where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud." [14] *Id.* at 402, 87 S.Ct. 1801. However, an independent challenge aimed directly at the arbitration agreement itself and not the contract as a whole does fall within a district court's jurisdiction. *Cf. id.* at 404, 87 S.Ct. 1801 ("[I]n passing upon a § 3 [of the FAA] application for a stay while the parties arbitrate, a federal court may consider only those issues *relating to the making and performance of the agreement to arbitrate.*") (emphasis added); *see also Unionmutual*, 774 F.2d at 529 ("The teaching of *Prima Paint* is that a federal court must not remove from the arbitrators consideration of a substantive challenge to a contract unless there has been an independent challenge to the making of the arbitration clause itself.").

Contrary to Bally's argument, the EDRP is not an arbitration clause within a contract, but an entire arbitration agreement. Bally argues that "[t]he contract, although it is styled EDRP, contains terms that are broader than the arbitration issue.

---

**14.** Although *Prima Paint* involved a claim that the underlying contract was induced by fraud, its holding is not limited to such claims. *See Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co.*, 774 F.2d 524, 529 (1st Cir.1985). Leading commentators on arbitration law have summarized the reach of *Prima Paint*:

> [T]he separability doctrine [of *Prima Paint*] has been applied to numerous issues affecting arbitrability other than fraud. These include: illegality; consensual requirements such as whether a draft was intended to be a finalized contract and mutual mistake; authority issues, such as ultra vires; supervening event issues, such as frustra-

tion of purpose; consensual defenses, such as duress, "overreaching," and unconscionability; procedural requirements such as time limits on submission of claims against seller for defective goods; and statute of limitations running on the contract containing the arbitration clause. [Thus, if the arbitration clause is separable from the contract, it is the arbitrator's duty to decide claims concerning the enforceability of the entire contract if it contains an arbitration provision that is not independently challenged.]

2 Ian R. Macneil et al., *Federal Arbitration Law* § 15.3.2, at 15:26–15:27 (1999) (footnotes omitted).

For example, it sets forth the terms and conditions of the plaintiff's employment." Transcript of June 26, 2001 Oral Argument at 8. However, as Brennan rightfully notes, Section 24.1 of the EDRP explicitly states: "This EDRP is not, and shall not be construed to create any contact of employment, express or implied." Section 24.1 of the EDRP, Ex. 1 of Infante Cert. Therefore, under *Prima Paint*, this Court has the authority to determine whether or not the EDRP is enforceable. *See generally Arakawa v. Japan Network Group*, 56 F.Supp.2d 349, 352 (S.D.N.Y.1999) (court has the authority to address the enforceability of entire arbitration agreement).

## 2. The Modifications to the EDRP

 In moving to dismiss and compel arbitration, Bally relies primarily upon the second modification of the EDRP ("EDRP II").[15] Thus, in order to determine whether Brennan's claims are subject to arbitration, the first question is whether EDRP II is a valid and enforceable contract. *See Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 225–26 (2d Cir.2001).

Although Brennan signed the original EDRP, she did not approve, sign, or otherwise consent to any subsequent unilateral modifications. The validity of EDRP II is thus dependent upon the legitimacy of the modification provisions set forth in the original EDRP. Section 25.1 of the original EDRP states:

> This agreement can be modified or terminated by the Employer upon thirty (30) days notice to the Employee, and the Employee's continued employment

beyond the expiration of the notice is consideration for the modification. Modification or revocation of this Agreement will have no application to disputes already submitted under the EDRP except by mutual agreement of the Employer and Employee.

Section 25.1 of EDRP, Ex. 1 of Infante Cert. However, Section 24.3 of the original EDRP, states that the

> EDRP can be modified or revoked *only by a writing, signed by both the Employee and the president or a representative of the Employer* specifically set forth in Article 6.1., that references this EDRP and specifically states an intent to modify or revoke this EDRP.

Section 24.3 of EDRP, Ex. 1 of Infante Cert. (emphasis added).[16]

 While a court should reconcile conflicting provisions in a contract when possible, these two clauses are irreconcilable. *See Hauser v. Western Group Nurseries, Inc.*, 767 F.Supp. 475, 488 (S.D.N.Y. 1991) ("Where two seemingly conflicting provisions can be reconciled, a court should do so in order to give both effect."). Accordingly, the original EDRP must be construed against Bally, the drafter. *See Board of Educ. v. CNA Ins. Co.*, 839 F.2d 14, 18 (2d Cir.1988) ("[B]asic principles of interpretation require that [contracts] be construed against the drafting party."). In addition, it is a general rule that "in the case of total repugnancy between two contract clauses, the first of such clauses shall be received, and the subsequent one rejected." *Honigsbaum's, Inc. v. Stuyvesant Plaza, Inc.* 178 A.D.2d 702, 577 N.Y.S.2d 165, 166 (3rd Dep't 1991); *see*

---

**15.** Although later EDRPs modified earlier versions, these modifications do not effect the scope of the agreement to arbitrate.

**16.** Recognizing this conflict, Bally attempted to reconcile it by adding the words "Except as

otherwise set forth herein..." to Section 24.3 of the original EDRP. *See* modified Section 24.3, *supra* n. 8. Because EDRP II is not a valid contract, this attempted modification is without legal effect. *See* p. 16 *infra*.

*also Liang v. Huang,* 255 A.D.2d 671, 679 N.Y.S.2d 210, 212 (3rd Dep't 1998). Here, Section 24.3 precedes Section 25.1. Accordingly, EDRP II, the second modification of the EDRP, is not a valid contract, as it was not signed by Brennen and a Bally representative.

### 3. The Original EDRP

Regardless of the validity of EDRP II, Bally maintains that Brennan is bound by the agreement which she signed—the original EDRP. *See* Reply Mem. at 2 n.1. However, plaintiff argues that the original EDRP should not be enforced because it is an unconscionable contract of adhesion. *See* Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss at 13.

### a. Unconscionability

Courts find contracts of adhesion when "the party seeking to rescind the contract establishes that the other party used 'high pressure tactics,' or 'deceptive language,' or that the contract is unconscionable." *Wright v. SFX Entm't Inc.,* No. 00 Civ. 5354, 2001 WL 103433, at *3 (S.D.N.Y. Feb 7, 2001). In New York, unconscionability generally requires both procedural and substantive elements. *See Gillman v. Chase Manhattan Bank,* 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988). The "substantive elements of unconscionability appear in the context of the contract per se [whereas the] procedural elements must be identified by resort to evidence of the contract formation process." *In the Matter of Friedman,* 64 A.D.2d 70, 407 N.Y.S.2d 999, 1008 (2nd Dep't 1978). Courts should determine unconscionability in a "flexible manner depending upon all the facts and circumstances of a particular case." *Id.*

Courts find contracts unconscionable where "an 'absence of meaningful choice on the part of one of the parties [exists] with contract terms which are unreasonably favorable to the other party.'" *Desiderio v. National Ass'n of Sec. Dealers,* 191 F.3d 198, 207 (2d Cir.1999), *cert. denied,* —— U.S. ——, 121 S.Ct. 756, 148 L.Ed.2d 659 (2001) (quoting 8 Samuel Williston, *A Treatise on the Law of Contracts* § 18:9, at 54 (4th ed.1998)). Although it is true that "one who signs an agreement without full knowledge of its terms might be held to assume the risk that [s]he has entered a one-sided bargain," this rule does not apply if a plaintiff is able to demonstrate the requisite "absence of meaningful choice." *Id.* Brennan alleges that Bally did not allow her enough time to review and understand the EDRP. She alleges that Bally employees were given only a few minutes to read the fourteen-page document while Infante talked on the phone. *See* Brennan Aff. at 14. Infante then collected the agreements by asking each employee aloud whether he or she had signed it. *See id.* Under these circumstances, it is unclear whether Brennan had a "meaningful choice" and voluntarily assented to the arbitration agreement. *Desiderio,* 191 F.3d at 207.

In order to compel arbitration, this Court must find that the EDRP was a valid contract. An unconscionable contract of adhesion is not a valid contract. Limited discovery is required so that the Court can determine whether the EDRP was an unconscionable contract of adhesion. *See Friedman,* 407 N.Y.S.2d at 1008 (Unconscionability must determined in light of "the facts and circumstances of a particular case."). In addition, a jurisdictional hearing may be necessary if the "proffered evidence is so conflicting and the record is rife with contradictions." *Foster–Miller Inc.,* 46 F.3d at 145.

## IV. CONCLUSION

For the foregoing reasons, Bally's motion to dismiss the Complaint and compel

arbitration is denied pending further discovery and a possible jurisdictional hearing. The parties are directed to commence jurisdictional discovery so that the Court will be able to make a decision as to the validity of the arbitration agreement.

Defendant is hereby ORDERED to produce:

1) a videotape of the meeting at which the EDRP was distributed ("Meeting"), if one in fact exists;

2) the videotape of what was shown at the Meeting;

3) the identity of each of the presenters at the Meeting;

4) the written notice informing the staff of the Meeting;

5) the names of all individuals in attendance at the Meeting;

6) the identities of the individuals who did not sign at the meeting and when they signed, if they did, and the employment status of those who never signed (whether or when they left and whether or when they were promoted).

Plaintiff is hereby ORDERED to produce:

1) the names of witnesses corroborating plaintiff's version of what occurred at the Meeting and any other documents relevant to the jurisdictional issue.

It is further ORDERED that the depositions of Kathryn Brennan and Fred Infante be taken forthwith; and

that this limited discovery shall end 30 days from the issuance of this Order, at which time a conference shall be held to determine whether a hearing is needed in order to resolve the jurisdictional issue.