**Lucille M. MCNIGHT, Plaintiff,**

v.

**The DORMITORY AUTHORITY OF THE STATE OF NEW YORK; John L. Buono; Paul J. Burgdorf; Samuel R. Davidson; Marilyn L. Gehr; Theodore A. Holmes; Donald H. McDowell; Felix Pugliese; Douglas Van Vleck; Woodie G. Williams, Defendants.**

No. 97–CV–394.

United States District Court,
N.D. New York.

Feb. 19, 1998.

Office of Lewis B. Oliver, Jr., Albany, NY (Lorraine H. Lewandrowski, of counsel), for Plaintiff.

Whiteman Osterman & Hanna, Albany, NY (Neil L. Levine, Heather D. Diddel, Beth A. Bourassa, of counsel), Offices of Stephen A. Boiko, Delmar, NY (Stephen A. Boiko, of counsel), for Defendants.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff commenced this action against defendants, the Dormitory Authority of the State of New York ("Dormitory Authority") and various individuals employed therein, pursuant to the federal constitution and various federal and state statutes. The Complaint alleges defendants discriminated against her on the basis of race, disability and political affiliation during her employment at the Dormitory Authority. Presently before the Court is defendants' motion for partial dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, defendants' motion is granted in part and denied in part.

## BACKGROUND

In January 1992, the Director of Urban Affairs, Woodie Williams, interviewed plaintiff, a black female, for a position of employment with the Dormitory Authority. Williams subsequently hired plaintiff to work as a consultant in the Dormitory Authority's

office in Delmar, New York. Her job was to coordinate the Minority/Women's Business Enterprise program with the Dormitory Authority's construction projects in the capital district region. According to plaintiff, Williams promised her an employment position with the Dormitory Authority when funds became available.

While a consultant, plaintiff alleges that the Deputy Executive Director of Construction Services, Samuel Davidson, refused either to communicate with her or engage her services. At a Board of Directors meeting, plaintiff contends that Davidson said she was a "no show" employee and that he disliked her affirmative action function. Plaintiff also maintains that defendants did not permit her to sign out automobiles to travel to work sites and that defendants denied her access to supplies, computer equipment and handicapped parking areas in front of the Dormitory Authority building. Furthermore, plaintiff asserts that the Director of Construction Support Service, Don McDowell, suggested she pursue her mission of affirmative action elsewhere. Plaintiff states that although she filed written complaints to her supervisor detailing these events, no responsive action was taken.

In October 1993, the Executive Director of the Dormitory Authority, Rudolph Rinaldi, appointed plaintiff to a part-time position of Affirmative Action Field Representative I. Plaintiff alleges, however, that the Dormitory Authority granted other similarly situated white employees full-time status. As a part-time employee, plaintiff's salary and benefits of employment, including health care and pension rights, were lower than that accorded to full-time employees. Additionally, plaintiff alleges that defendants initially refused her a computer routinely given to non-minority employees of similar stature.

On March 24, 1995, Rinaldi assigned plaintiff to a permanent position with the Personnel Department under the supervision of Marilyn Gehr, effective March 27, 1995. Plaintiff alleges, however, that Gehr refused to acknowledge her new position because of her race. On April 6, 1995, the Executive Director of the Dormitory Authority, Ted Holmes, wrote a letter to plaintiff rescinding her new position. Plaintiff alleges that despite her appointment being rescinded, Holmes appointed white employees to other positions and permitted other employees to receive the benefits of transfer and job reclassification denied her.

On August 17, 1995, plaintiff filed an administrative complaint with the New York State Department of Human Rights ("DHR"), charging that she had been subject to discrimination while employed at the Dormitory Authority. Beginning in November 1995, plaintiff contends that Dormitory Authority officials began retaliating against her for filing her complaint with the DHR. Specifically, plaintiff avers that defendants singled her out and placed her in a small office cluttered with machinery. Plaintiff also contends that Dormitory Authority officials did not consider her for any promotional opportunities. In November 1995, for example, she asserts Gehr denied her appointment to the position of Administrative Assistant, instead awarding the job to a white male with less experience. Similarly, plaintiff alleges that on December 12, 1995, she interviewed for the position of Communications Associate, but the appointment was awarded to a white female.

On January 30, 1996, plaintiff filed a second administrative complaint with the DHR, alleging retaliatory acts by defendants. On August 20, 1996, the DHR determined that, with respect to plaintiff's first complaint, there was "no probable cause to believe that [the Dormitory Authority] has engaged in or is engaging in the unlawful discriminatory practice complained of."

In October 1996, plaintiff complained to the Executive Director of the Dormitory Authority, John Buono, and the Senior Director of Operations, Felix Pugliese, of the discriminatory practices alleged. According to plaintiff, Pugliese threatened her that she could not possibly win her complaint with the DHR. Plaintiff also maintains that the Dormitory Authority did not otherwise respond to her complaint.

In October 1996, following the advice of her Doctor, plaintiff ceased working. In a letter, plaintiff's Doctor informed the Dormi-

tory Authority he was treating plaintiff for hypertension, allergic rhinitis and stress reaction and had advised her to stop working and seek psychological counseling.

On December 23, 1996, the Equal Opportunity Employment Commission (EEOC) issued a final determination that plaintiff's first complaint had failed to establish a violation of Title VII by the Dormitory Authority. On January 9, 1997, plaintiff's doctor notified the Dormitory Authority that plaintiff was experiencing stress reaction as a result of the alleged discriminatory acts of defendants. On January 28, 1997, the Dormitory Authority terminated plaintiff's employment. A few weeks later, plaintiff filed a third complaint with the DHR.

## DISCUSSION

Plaintiff commenced the instant action on March 21, 1997. Her Complaint sets forth four causes of action against defendants: (1) a claim under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, for race discrimination; (2) a claim under § 296 of the New York Human Rights Law (HRL), for race discrimination; (3) a claim under the American with Disabilities Act (ADA), 42 U.S.C. § 12110 *et seq.*, for disability discrimination; and (4) a claim under 42 U.S.C. § 1983 and 42 U.S.C. § 1988, for violations of plaintiff's rights to free speech and association pursuant to the First and Fourteenth Amendments of the United States Constitution.

Presently before the Court is defendants' motion to dismiss parts of the Complaint against various defendants pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, defendants seek dismissal of the following: (1) plaintiff's Title VII claim, (a) in part, against the Dormitory Authority,[1] and (b) in its entirety, against the remaining defendants; (2) plaintiff's HRL claim against all defendants; and (3) plaintiff's ADA claim against all defendants.

### I. Treatment of Exhibits

■ As a threshold matter, the Court must decide whether to convert defendants' motion to dismiss into one for summary judgment, as both parties have submitted materials beyond the four corners of the pleadings. Specifically, defendants have attached as exhibits in support of their motion to dismiss the letters of complaint filed by plaintiff with the DHR and the EEOC, and the DHR's ruling with respect to plaintiff's first administrative complaint. Although these documents of public record are referred to in plaintiff's federal Complaint, they are not annexed as exhibits thereto. Plaintiff, in similar fashion, has opposed defendants' motion to dismiss by submitting as exhibits the letters of complaint filed by her with the DHR and the EEOC and various determinations and investigative reports issued by the DHR and the EEOC in response to those complaints. Plaintiff also has submitted two affidavits: one from plaintiff's attorney, Lorraine Lewandrowski, and the other from plaintiff McNight.

Defendants request that the Court consider its supplemental submissions without converting its motion to one for summary judgment. Plaintiff fails to comment on the potential for conversion, presumably because she agrees with defendants that conversion should not result.

It is beyond peradventure that when "matters outside the pleading are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). However, because a complaint includes "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," Fed.R.Civ.P. 10(c); *see, e.g., Cosmas v. Hassett,* 886 F.2d 8 (2d Cir.1989), courts have held that a "defendant may introduce pertinent [documents] as part of his motion attacking the pleadings" if plaintiff has failed to either attach to the

---

1. The Dormitory authority seeks dismissal of only paragraphs 33–34, 39–45, 47–49, 64, 69–70, 78– 82, 85, 88 and 91–92 of the Complaint.

complaint or incorporate by reference documents upon which it relies on in the complaint. 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, Federal Practice & Procedure § 1327, at 762–63 (1990); *see, e.g., Cortec Ind., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). As explained by the Second Circuit, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the defendant may produce the [document] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure." *Cortec* 949 F.2d at 47; *Roucchio v. Coughlin,* 923 F.Supp. 360, 366 (E.D.N.Y. 1996).

Applying these principles, the Court finds that it may properly consider, as part of the pleadings, the various administrative complaints and determinations of the DHR and EEOC submitted by both defendants and plaintiff. *See Jadoo v. City of New York,* 1997 WL 614508, *2 (E.D.N.Y. Sept.29, 1997) (concluding EEOC charge attached as exhibit to defendants 12(b)(6) motion did not convert it to one for summary judgment); *Greene v. Term City, Inc.,* 828 F.Supp. 584, 587 n. 1 (N.D.Ill.1993) (finding EEOC charge part of pleadings in connection with 12(b)(6) motion, even though it was not attached to the complaint). Although plaintiff's Complaint fails to incorporate these documents by reference or attach them to it, it relies upon them on numerous occasions to support plaintiff's claims. *See Cortec,* 949 F.2d at 48. Moreover, to consider these documents would not surprise plaintiff, given her reliance on these items in both her Complaint and opposition to defendants' motion to dismiss. *Id.* Most likely, it was an oversight that plaintiff did not attach these items as exhibits.

In any event, judicial notice of the DHR and EEOC documents is proper. The administrative complaints and findings are matters of public record, and their authenticity is not disputed by either party. *See Roucchio,* 923 F.Supp. at 366.

The Court, by contrast, will exclude from consideration the two affidavits submitted by plaintiff in opposition to defendants' motion to dismiss. These items may not be considered part of the pleadings under *Cortec,* nor will the Court convert defendants' motion to dismiss into a premature motion for summary judgment. *See Kopec v. Coughlin,* 922 F.2d 152, 154 (2d Cir.1991) (stating that when materials outside pleadings are submitted on 12(b)(6) motion, courts have option of excluding material or converting motion to one for summary judgment); *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988) (same).

## II. Standard for a Motion to Dismiss

A district court should grant a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *Annis v. County of Westchester,* 36 F.3d 251, 253 (2d Cir. 1994). In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff, and accept these allegations as true. *Id.* at 249; *see Christ Gatzonis Elec. Contractor, Inc. v. New York City Sch. Constr. Auth.,* 23 F.3d 636, 639 (2d Cir.1994). The Court's duty is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980); *accord Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). The appropriate inquiry, therefore, is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 124 (2d Cir.1991) (plaintiff is not compelled to prove his case at the pleading stage).

Additionally, the Rules do not require the claimant to set out in detail the facts upon which the claim is based, but only that a defendant be given "fair notice of what the claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Individual allegations, however, that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are meaningless as a practical matter and, as a matter of law, insufficient to state a claim. *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987).

It is with this standard in mind that the Court addresses the issues presented.

### III. Plaintiff's claims under Title VII

Defendants move to dismiss plaintiff's Title VII claims, in their entirety, against the individual defendants, and, in part, against the Dormitory Authority.

■ Turning to the individual defendants, the Complaint seeks to hold nine current or former employees of the Dormitory Authority liable under Title VII. However, as defendants correctly argue, and plaintiff now concedes, "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995) (holding individual defendants are not an "employer" within meaning of Title VII). Therefore, plaintiff's Title VII claims against the individual defendants are dismissed.

Turning next to the Dormitory Authority, defendants argue that because the bulk of plaintiff's Title VII claims were not included in, nor are reasonably related to, any DHR or EEOC charge filed by plaintiff, those allegations raised for the first time in the Complaint should be dismissed for failure to exhaust administrative remedies. Defendants also argue many of plaintiff's Title VII claims should be dismissed as time-barred.

Plaintiff, in turn, asserts that her Title VII claims have been exhausted because they are reasonably related to plaintiff's administrative complaints. Plaintiff also counters that her claims are timely under the continuing violation doctrine.

Title VII requires a claimant who desires to bring a suit in federal court to file a charge of discrimination with the EEOC within one hundred eighty (180) days "after the alleged unlawful employment practice occurred," or within three hundred 300 days of the alleged discrimination if the claimant "has initially instituted proceedings with a State or local agency with authority to grant or seek relief ... or to institute criminal proceedings." 42 U.S.C. § 2000e–5(e) (300-day period is available filing period for claimants in New York which has its own fair employment laws). Title VII further provides that "a civil action may be brought against the respondent named in the charge ... by the person claiming to be aggrieved" within 90 days of receipt of what is known as a "right-to-sue" letter from the EEOC. 42 U.S.C. § 2000e–5(f)(1). Failure to file before the time elapses requires the court to dismiss a subsequent lawsuit as untimely. *See, e.g., Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (the "filing [of] a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like the statute of limitations, is subject to waiver, estoppel, and equitable tolling"); *Delaware State College v. Ricks,* 449 U.S. 250, 256, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

Furthermore, a plaintiff asserting Title VII claims must satisfy the related requirement of administrative exhaustion. It is axiomatic that "a district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the charge." *Butts v. City of New York Dept. of Housing, Preservation and Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993) (quoting *Stewart v. United States Immigration & Naturalization Service,* 762 F.2d 193, 198 (2d Cir.1985)). As noted in *Butts,* the "exhaustion requirement is an essential element of Title VIII's statutory scheme." *Id.* Its purpose is to "encourage settlement of discrimination disputes through conciliation and vol-

untary compliance." *Id.; see also Stewart v. United States Immigration and Naturalization Service,* 762 F.2d 193, 198 (2d Cir.1985).

■ The Second Circuit has recognized three instances when allegations not alleged specifically in the administrative charge are nonetheless "reasonably related" to the charge to satisfy the exhaustion requirement. *Butts,* 990 F.2d at 1402. "The first type of reasonably related claim is essentially an allowance of loose pleading." *Id.* This allows for claims "not raised in the charge to be brought in a civil action where the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.' " *Id.* (quoting *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 107 n. 10 (2d Cir.1978)); *see also Silver v. Mohasco Corp.,* 602 F.2d 1083, 1090 (2d Cir. 1979) (stating that a court should look beyond "the four corners of the often inarticulately framed charge" in determining exhaustion), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). It is of no moment whether the EEOC actually investigated the claim; it is the opportunity to do so that is key. *Dargento v. Bally's Holiday Fitness Centers,* 990 F.Supp. 186, 193 (W.D.N.Y.1997).

"The second type of reasonably related claim is one alleging retaliation by an employer against an employee for filing an EEOC charge." *Id.* (citing *Malarkey v. Texaco, Inc.,* 983 F.2d 1204 (2d Cir.1993)). This situation justifies a loosening of the exhaustion requirement because the benefits of EEOC involvement are diminished at this stage. *Id.*

"The third type of reasonably related claim is where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id.* (citing *Almendral v. New York State Office of Mental Health,* 743 F.2d 963, 967 (2d Cir.1984)). This category "implicitly recognizes the cost to a plaintiff of requiring exhaustion in circumstances·where the likelihood of a successful settlement is limited." *Id.* at 1403.

■ In the present case, plaintiff filed three administrative complaints with the DHR and concurrently with the EEOC. Plaintiff's first complaint, dated August 17, 1995, alleged race discrimination resulting from the rescission of her appointment to Personal Representative in April 1995.[2] Plaintiff's second complaint, filed January 30, 1996, alleged defendants assigned her a smaller work space and denied her two promotions in retaliation for the first complaint. Her third complaint, filed February 14, 1997, averred defendants terminated her in retaliation for her prior complaints.

**2.** In a chimerical attempt to satisfy the exhaustion requirement, plaintiff argues that her first administrative Complaint should include allegations of race discrimination contained in a letter entitled "Human Rights Complaint," which she claims she wrote and presented to Rey Torres of the DHR prior to filing her administrative charge. Plaintiff maintains that Torres drafted her DHR charge based upon that letter, which plaintiff later signed without the benefit of counsel.

The Court, however, will not consider this letter part of plaintiff's administrative complaint. First, the letter contains numerous allegations of discriminatory conduct by defendants, in stark contrast to the single incident of discrimination alleged in the administrative complaint. Presumably, plaintiff reviewed the charge before signing it. Thus, if the administrative charge was incomplete, she could have amended it to make it accurate. Signing an incomplete charge should be readily apparent to one even without counsel. Second, there is no evidence that the

letter was ever sent to the DHR or the EEOC. The letter was not annexed to the Complaint nor incorporated by reference in it; plaintiff did not sign the letter; the letter contains two different dates; and the letter is not addressed to either agency. Third, plaintiff fails to cite to any case authority on point to support her position that the letter be considered part of her administrative complaint. The cases she does cite are inapposite. Lastly, and most importantly, to accept the letter as part of the administrative complaint would frustrate the purpose of administrative exhaustion. This is because there is no evidence that either the DHR or the EEOC relied on the letter in conducting their investigations. The evidence, in fact, is to the contrary. A review of the HRL determination and order reveals that the HRL only investigated plaintiff's reassignment to the Personnel Department. Thus, an opportunity for "settlement through conciliation or voluntary compliance" has not occurred with respect to the allegations contained in the letter. *See Brown v. City of New York,* 869 F.Supp. 158, 169 (S.D.N.Y.1994).

Defendants assert that the allegations contained in paragraphs 33–34, 39–45, 47–49, 64, 69–70, 78–82, 85, 88 and 91–92 of the judicial Complaint have not been exhausted. Plaintiff, in response, concedes the allegations in paragraphs 41–44, 49 and 64 of the Complaint should be dismissed because these allegations are unrelated to any allegations contained in her administrative complaints. The Court thus dismisses these paragraphs.

With respect to the remaining paragraphs, however, plaintiff contends that not every detail in her federal complaint need be presaged in her administrative complaints. As support for this position, plaintiff cites to *Butts* to argue she has exhausted her administrative remedies. Specifically, plaintiff argues these paragraphs are "reasonably related" to her administrative complaints.

■ Turning first to paragraphs 33–34, 39–40, 45 and 47–49 of the Complaint, these paragraphs assert both particular incidents of discrimination and general allegations that defendants had a policy or practice of discrimination. The Court dismisses these paragraphs in their entirety. These paragraphs were neither included in, nor are reasonably related to, the administrative complaints filed by plaintiff. *See Butts,* 990 F.2d at 1402–03. Furthermore, while literary exactitude is not required from a predicate administrative charge to a federal complaint, the above paragraphs are not sufficiently akin to the administrative charge to satisfy the notice and conciliation purposes of Title VII. An EEOC investigation plainly would not have encompassed these alleged incidents. *See id.*

This is not a case where the Complaint merely amplifies or fills in the details of an administrative charge. *Dargento,* at 194. To the contrary, these paragraphs allege a throng of general and specific incidents of discrimination unrelated to the specific incidents alleged in plaintiff's administrative complaints. Plaintiff had three opportunities to complain of these acts to the DHR and EEOC. Inexplicably, she failed to complain of any of these acts.

Perhaps most tellingly, in arguing *Butts* and its progeny apply to render her claims exhausted, plaintiff is driven to rely on the enigmatic letter allegedly given to a DHR employee. *Supra* note 2. The Court has determined, however, that this letter cannot be considered part of plaintiff's administrative charge. Plaintiff makes no other arguments to support her claims. Thus, because the above allegations are not reasonably related to plaintiff's administrative charges, the Court dismisses them in their entirety.[3]

Even if the Court was to find the above allegations reasonably related to plaintiff's administrative complaint, many of these allegations of discrimination occurred more than 300 days prior to her filing with the EEOC. Thus, they are time-barred. Plaintiff counters that the continuing violation doctrine tolls the limitations period. She is wrong.

■ "Under [the] continuing violation doctrine, where the defendant has engaged in a continuous policy of discrimination, acts in furtherance of that policy are not viewed in isolation. In such circumstances, if the charge has been filed no later than 300 days after the last act by the defendant pursuant to its policy, the plaintiff may recover for earlier acts of discrimination as well." *Choi,* 939 F.Supp. at 311 (internal quotation marks and citations omitted). Stated differently, when evidence of an ongoing discriminatory policy or practice is present, a court may consider all of an employer's actions allegedly taken pursuant to such policy, even if some are time-barred. *Van Zant v. KLM Royal*

---

3. Although not addressed by the parties, many of these allegations occurred prior to plaintiff filing her first administrative charge. There is authority that the "reasonably related" test only applies to satisfy exhaustion of acts occurring subsequent to the filing of the administrative charge. *Butts,* 990 F.2d at 1401 ("A district court only has jurisdiction to hear claims that ... are based on conduct *subsequent* to the EEOC charge which is reasonably related to that alleged in the EEOC charge) (emphasis added)

(internal quotation marks and citations omitted); *Alfano v. Costello,* 940 F.Supp. 459, 469 (N.D.N.Y.1996) (reasonably related test applies only to "discriminatory conduct that occurred after a plaintiff filed her EEOC charge") (emphasis added). However, this issue appears unsettled. While *Butts* distills a test that by its terms applies only to post-EEOC filing conduct, the *Butts'* opinion, in fact, analyzes the pre-EEOC allegations under the reasonably related test. 990 F.2d at 1403.

*Dutch Airlines,* 80 F.3d 708, 713 (2d Cir. 1996). Nonetheless, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp.,* 10 F.3d 46, 52 (2d Cir.1993), *cert. denied,* 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994); *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994).

 A continuing violation may be found if the proof shows a specific and ongoing policy or practice of discrimination, or if an employer allows specific, related instances of discrimination to continue unremedied such that those instances amount to a discriminatory practice or policy. *Van Zant,* 80 F.3d at 713; *Cornwell,* 23 F.3d at 703. Nevertheless, "the continuing violation doctrine is disfavored in this Circuit, and will be applied only upon a showing of compelling circumstances." *Lloyd v. WABC–TV,* 879 F.Supp. 394, 399 (S.D.N.Y.1995); *see Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408, 1415 (S.D.N.Y.1989); *LaBeach v. Nestle Co., Inc.,* 658 F.Supp. 676, 687 (S.D.N.Y.1987).

 In the case at hand, plaintiff's continuing violation argument fails because she did not allege an ongoing discriminatory practice or policy in her administrative complaint. *See Ryan v. New York State Thruway Auth.,* 889 F.Supp. 70, 77 (N.D.N.Y. 1995) (citing *Miller v. International Tel. & Tel. Corp.,* 755 F.2d 20, 25 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122, *reh'g denied,* 474 U.S. 1015, 106 S.Ct. 552, 88 L.Ed.2d 479 (1985)). Similarly, plaintiff's federal Complaint fails to allege sufficient facts to give rise to a continuing violation. *See, e.g., Dixit v. City of New York Dept. of General Servs.,* 972 F.Supp. 730, 736 (S.D.N.Y.1997); *Neilson v. Colgate–Palmolive Co.,* 1997 WL 297051, at *1 (S.D.N.Y. June 4, 1997). Thus, the continuing violation doctrine does not apply to render plaintiff's claims of discrimination timely.

 Defendants next seek to dismiss paragraphs 69–70 of the Complaint. These paragraphs allege that in October 1996, defendants failed to respond to plaintiff's complaints of discriminatory treatment and that defendants threatened her that she "could not possibly win any action against [them]." While plaintiff's administrative charge of January 20, 1996 did not reference this incident, it does charge "retaliation."

Defendants argue that because plaintiffs' administrative complaint did not reference this incident, these paragraphs should be dismissed. Defendant's argument, however, is in conflict with the Second Circuit's instruction that post-EEOC allegations of retaliatory conduct are "reasonably related" to a prior administrative complaint, because "the principle benefits of EEOC involvement, mediation of claims and conciliation are much less likely to result." *Butts,* 990 F.2d at 1402. When, as here, a plaintiff files an administrative complaint alleging retaliation, she should not have her federal retaliation claims dismissed merely because she filed a charge that did not include each instance of retaliatory conduct. To adopt defendants' argument would defeat the purposes of administrative remedies because no plaintiff would file charges of retaliation if this were the case.

Thus, because paragraphs 69–70 may be viewed as alleging retaliatory conduct reasonably related to plaintiff's administrative complaints, they are retained.

 Lastly, defendants seek to dismiss paragraphs 78–82, 85, 88 and 91–92 of the Complaint. These paragraphs contain general, conclusory allegations that the Dormitory Authority engaged in a policy and practice of discrimination against minorities, causing defendants to deny plaintiff, *inter alia,* the privileges of job reclassifications, training, mentoring, salary increases, travel and promotional opportunities, work assignments, impartial employee evaluations and equal access to staff meetings. The Complaint—far from a paragon of clarity—provides no details to support these allegations.

Whether these paragraphs require dismissal turns on whether they are "reasonably related" to plaintiff's administrative charges. Plaintiff's three administrative complaints alleged that the Dormitory Authority rescinded her promotion to Personnel Representative on account of her race and that the

Dormitory retaliated against her by placing her in a smaller office, denying her promotions to both Administrative Assistant and Communications Assistant, and terminating her.

Neither the second nor third "reasonably related" categories under *Butts* apply. The paragraphs at issue do not allege retaliation by defendants under category two, nor do they fall within category three reasonably related situations, covering "incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *See Butts,* 990 F.2d at 1402; *Choi v. Chemical Bank,* 939 F.Supp. 304, 312 (S.D.N.Y.1996).

That leaves us only with category one— whether the above allegations "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Butts,* 990 F.2d at 1402 (internal quotation marks and citations omitted). With respect to paragraphs 91–92, the Court finds these paragraphs are reasonably related to the administrative charge insofar as they allege plaintiff was denied job reclassifications, promotional opportunities and opportunities for advancement due to her race.

With respect to the remaining allegations in paragraphs 91–92 and paragraphs 78–82, 85, 88, the Court finds these allegations are not reasonably related to the administrative charges. *See Samimy v. Cornell Univ.,* 961 F.Supp. 489, 492 (W.D.N.Y.1997); *Sprott v. Franco,* 1997 WL 79813, *6 (S.D.N.Y. Feb.25, 1997); *Baker v. National R.R. Passenger Corp.,* 1994 WL 714279, *3 (S.D.N.Y. Dec.22, 1994), *reconsideration denied,* 1997 WL 53237 (S.D.N.Y. Feb.7, 1997); *Dukes v. Steinman, Boynton, Gronquist & Birdsall,* 1994 WL 406090, *2 (S.D.N.Y. July 29, 1994). Although courts have generally construed this *Butts* category liberally to effectuate the remedial purposes of Title VII, *Walker v. Columbia Univ.,* 1997 WL 749391, *2 (S.D.N.Y. Dec.4, 1997) (citations omitted), these paragraphs are not within the fair ambit of plaintiff's administrative charges.

In *Butts,* the Second Circuit found that an administrative charge "of exclusion from department reorganization meetings likely would have included an inquiry into her exclusion from the meetings set forth in her complaint." *Butts,* 990 F.2d at 1403. Here, by contrast, the allegations are not sufficiently related to plaintiff's administrative charges to satisfy the notice and conciliation purposes of Title VII. Stated differently, plaintiff's administrative claims regarding promotional opportunities, office space and termination do not serve as jurisdictional hooks for claims of discriminatory training, mentoring, work assignments, employee evaluations and staff meetings. To hold otherwise would allow the reasonably related exceptions to swallow the rule of administrative exhaustion. Accordingly, the Court lacks jurisdiction over the allegations contained in these paragraphs.

In sum, the Court dismisses, in their entirety, paragraphs 33–34, 39–45, 47–49, 64, 78–82, 85 and 88 of the Complaint. Paragraphs 91–92 are dismissed to the extent stated above.

## IV. Plaintiff's Claims under State Law

Plaintiff's second cause of action asserts that defendants engaged in unlawful discriminatory employment practices in violation of the New York Human Rights Law ("HRL"). Defendants contend that plaintiff cannot maintain this action in this Court under the HRL to the extent she has elected a New York State administrative remedy.

Section 297 of the HRL, the so-called election of remedies provision, provides that:

Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, *unless* such person has filed a complaint hereunder or with any local commission on human rights.

N.Y.Exec.Law § 297(1) (McKinney 1993) (emphasis added); *Moodie v. Federal Reserve Bank of New York,* 58 F.3d 879, 882 (2d Cir.1995). "Once a plaintiff has elected an administrative remedy by filing a complaint with the [DHR], subsequent judicial action based on the same incident is barred unless the administrative proceedings were terminated for 'administrative convenience.'" *See, e.g.,* Pierre v. Chemical Bank, 960

F.Supp. 21, 22 (E.D.N.Y.1997) (citing N.Y.Exec.Law § 297(1) (McKinney 1993)); *Baker v. National Railroad Passenger Corp.*, 1994 WL 714279, *2 (S.D.N.Y. Dec.22, 1994).

In the present case, plaintiff concedes that this Court lacks jurisdiction over the state law claims alleged in her first administrative complaint because the DHR dismissed these claims after an adjudication on the merits. *See* N.Y.Exec.Law § 297. As to plaintiff's second and third administrative complaints, the DHR, in April 1997, dismissed both complaints on the grounds of "administrative convenience." The election of remedies provision, therefore, does not bar this Court from exercising jurisdiction with respect to these claims. *See Promisel v. First American Artificial Flowers, Inc.*, 943 F.2d 251, 257–58 (2d Cir.1991), *cert. denied*, 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992).

█ Nonetheless, because the Court has dismissed parts of plaintiff's Title VII claims for failure to exhaust administrative remedies, the Court will not exercise supplemental jurisdiction over plaintiff's corresponding state law claims. To permit "the state law claims to continue in federal court would enable plaintiff to circumvent the statutory administrative exhaustion requirements." *See Spurlock v. NYNEX*, 949 F.Supp. 1022, 1034 (W.D.N.Y.1996). Therefore, "the only state claims that survive this motion to dismiss are those which correspond to the surviving federal claims." *Id.*

█ Defendants also seek dismissal of all state law claims asserted against the individual defendants. Although individual defendants may not be held liable under Title VII, they may be held so under the HRL. *Tomka*, 66 F.3d at 1317; *Bush v. Raymond Corp., Inc.*, 954 F.Supp. 490, 496–97 (N.D.N.Y.1997). Here, HRL liability may arise under § 296(6) of the HRL, which provides that "[i]t shall be an unlawful discrimi-

natory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article." N.Y.Exec.Law. § 296(6) (McKinney 1993). Although the Court has dismissed most of plaintiff's claims against the individual defendants on the grounds that these claims have not been exhausted and also are time-barred, those remaining paragraphs in the Complaint that have not been dismissed against the individual defendants are retained.

## V. Plaintiff's ADA Claims

Lastly, defendants seek dismissal of plaintiff's claim under the ADA. According to defendants, plaintiff has not satisfied the exhaustion requirement because plaintiff's administrative charges do not assert a claim under the ADA. Furthermore, defendants maintain that many allegations contained in the Complaint are time-barred and that individuals cannot be held liable under the ADA.

█ Plaintiff, in turn, concedes that the individual defendants may not be held liable under the ADA. This Court has held that because the ADA's definition of employer mirrors that of Title VII, individuals may not be held liable under the ADA. *Duprey v. Prudential Ins. Co.*, 910 F.Supp. 879, 884 (N.D.N.Y.1996); *Romand v. Zimmerman*, 881 F.Supp. 806, 812 (N.D.N.Y.1995). Thus, plaintiff's ADA claims against the individual defendants are dismissed.

Plaintiff, on the other hand, contests the dismissal of her ADA claims against the Dormitory Authority. Specifically, plaintiff argues that her third administrative complaint satisfies the requirement of exhaustion for her present ADA claim.[4]

█ The enforcement provisions of Title VII of the Civil Rights Act of 1964, as amended, are applicable to actions brought

---

4. Plaintiff's third administrative complaint alleged, in relevant part:

On January 28, 1997, I was fired from my position allegedly because of "abandonment" of my position. The letter was signed by Felix Pugliese, Director of Operations. The Respondent was well aware why I was out and given documentation to show why I was out. I know that Tom Hunt and Mrs. Parker, both of whom have been out for longer periods than I, have not been terminated. Mrs. Parker and Mr. Hunt have not filed complaints of discrimination. I have filed previous complaints of discrimination. Based on the foregoing *I charge the Respondent with retaliating against me* by terminating my employment, in violation of Section 296.7 of the [HRL] (emphasis added).

under the ADA against employers. *See* 42 U.S.C. § 12117(a); *Lacoparra v. Pergament Home Centers, Inc.,* 982 F.Supp. 213, 225 (S.D.N.Y.1997); *Spurlock,* 949 F.Supp. at 1029; *Lillien v. M.A.B.S.T.O.A. (MTA),* 1996 WL 711495, at *2 (S.D.N.Y. Dec.11, 1996). *But see Chatoff v. West Pub. Co.,* 948 F.Supp. 176, 178 (E.D.N.Y.1996) (distinguishing between charges brought against employers under § 12112 on one hand, and charges brought against public employers under § 12132 on the other, with only the former requiring plaintiff to exhaust administrative remedies). Here, plaintiff only asserts claims under § 12112 of the ADA. Thus, as a statutory condition precedent to this suit, plaintiff must have filed an administrative charge. *See id.;* 42 U.S.C. § 2000e–5(e); *Butts,* 990 F.2d at 1397.

The Court holds that plaintiff failed to exhaust her administrative remedies with respect to her ADA claims. Even a cursory review of plaintiff's administrative complaint exposes that she has not alleged an ADA claim, but only a retaliatory claim for complaints of race discrimination. Plaintiff's characterization of her ADA claim as "reasonably related" to her retaliatory charge of race discrimination, under the first *Butts* category, is misplaced. Courts have uniformly rejected the argument that exhaustion is satisfied when a plaintiff's administrative charge alleges discrimination based on another type of discriminatory conduct. *See, e.g., Spurlock,* 949 F.Supp. at 1029–30 (dismissing ADA claim because EEOC complaint only alleged race discrimination); *Acosta v. Yale Club of New York City,* 1995 WL 600873, at *7 (S.D.N.Y. Oct. 12, 1995) (dismissing race and gender discrimination claims because plaintiff only alleged retaliation in her EEOC complaint); *Walsh v. National Westminster Bancorp.,* 921 F.Supp. 168, 172 (S.D.N.Y. 1995) (dismissing Title VII sexual harassment claim where plaintiff marked box for retaliation but not sex discrimination); *Mitchell v. Fab Ind. Inc.,* 1996 WL 417522, *3 (S.D.N.Y. July 25, 1996) ("claims of discrimination based on race and national origin are not reasonably related to the original claims of religious and sexual discrimination under the loose pleading allowance described in *Butts* "). This Court thus declines plain-tiff's invitation to engage in a leap of logic to construe her administrative charge as one noticing an ADA claim. Plaintiff's ADA claim plainly would not fall within the scope of an EEOC investigation arising from a charge of retaliation based on race discrimination. *See id.*

Accordingly, the Court dismisses plaintiff's claims under the ADA in their entirety.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted in part and denied in part. Specifically, with respect to plaintiff's Title VII claims, paragraphs 33–34, 39–45, 47–49, 64, 78–82, 85 and 88 are dismissed in their entirety, and paragraphs 91–92 are dismissed to the extent stated herein. As to plaintiff's HRL claims, the Court dismisses those paragraphs that correspond to the dismissed Title VII claims. Lastly, plaintiff's claims under the ADA are dismissed in their entirety.

**IT IS SO ORDERED.**