Lucille McKNIGHT, Plaintiff,

v.

**DORMITORY AUTHORITY OF THE STATE OF NEW YORK; John L. Buono; Paul J. Burgdorf; Samuel R. Davidson; Marilyn L. Gehr; Theodore A. Holmes; Donald H. McDowell; Felix Pugliese; Douglas H. Van Vleck and Woodie G. Williams, Defendants.**

No. 97–CV–0394 (TJM).

United States District Court, N.D. New York.

Nov. 4, 1999.

Lewis B. Oliver, Jr., Albany, NY, for Plaintiff.

Neil L. Levine, Beth A. Bourassa, Whiteman, Osterman & Hanna, Albany, NY, for Defendants.

## MEMORANDUM—DECISION & ORDER

MCAVOY, Chief Judge.

### I. Background

The underlying facts were set forth in this Court's prior decision, familiarity with which is assumed. *See McNight v. Dormitory Authority of the State of New York,* 995 F.Supp. 70 (N.D.N.Y.1998).

Plaintiff commenced the instant action on March 21, 1997. Defendants brought a motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6) on November 4, 1997, which this Court granted in part and denied in part. *See McNight*, 995 F.Supp. 70.

Presently before the Court are ˙Defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56 seeking dismissal of Plaintiff's Complaint in its entirety and Defendants' motion pursuant to FED. R. EVID. 702 to preclude the proposed testimony of Plaintiff's expert Dr. Bradley Biggs.[1]

## II.  Discussion

### A.  Compliance with the Local Rules

The papers submitted to this Court by both parties failed to conform to the requirements of this districts' local rules. First, Plaintiff's 7.1(a)(3) Statement is non compliant. Rule 7.1(a)(3) requires the non-movant's response to "mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs." N.D.N.Y.L.R. 7.1(a)(3). Plaintiff's 7.1(a)(3) statement bore little resemblance to Defendants' Rule 7.1(a)(3) Statement. Local Rule 7.1(a)(3) specifically provides that "[a]ny facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." Thus, the Court deems the portions of Defendants' 7.1(a)(3) statement that are not specifically controverted by Plaintiff to be admitted. Plaintiff's 7.1(a)(3) statement also contained inappropriate legal argument. *See, e.g.,* Pl. 7.1(a)(3) Statement ¶ 18. The Court disregarded all such legal argument. Moreover, the papers submitted by Plaintiff did not contain adequate citations (short citations should contain enough information to identify the legal precedent cited) to supporting legal precedent. *See* N.D.N.Y.L.R. 7.1(a)(1). Equally troubling was the fact that the majority of the statements in Defendants' Reply Affidavit of Beth A. Bourassa were legal argument, as were portions of Bourassa's original affidavit. Accordingly, the Court

disregarded the affidavits to the extent statements therein contained legal argument. N.D.N.Y.L.R. 7.1(a)(2). The responsibility for consulting the local rules and submitting papers that conform to the clear standards set forth therein is on the parties, not the Court. Future non-compliance with the local rules will lead to rejection of papers and imposition of appropriate sanctions.

### B.  Exclusion of Dr. Biggs' Report and Testimony

Defendants move pursuant to FED. R. EVID. 702 to exclude the expert testimony and report proffered by Plaintiff's expert Dr. Bradley Biggs.

The Court will consider the admissibility of Dr. Biggs' testimony as a threshold matter. FED. R. CIV. P. 56(e) requires that affidavits submitted in opposition to a summary judgment motion shall be "made on personal knowledge," set forth facts "as would be admissible in evidence, and shall show that the affiant is competent to testify to the matters stated therein." On a summary judgment motion, a district court may consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Group of Am.*, 164 F.3d 736, 746 (2d Cir. 1998); *Raskin v. Wyatt Co.*, 125 F.3d 55, 66–67 (2d Cir.1997) ("The court performs the same role at the summary judgment phase as at trial; an expert's report is not a talisman against summary judgment.") (citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir.1987) (noting that although the Federal Rules of Evidence "expanded the acceptable bases for expert opinion[,] … this expansion does not extend to make summary judgment impossible whenever a party has produced an expert to support its position")). Plaintiff's opposition papers and Rule 7.1(a)(3) statement illustrate that the testimony and report of Dr. Biggs are integral to her opposition to Defendants' summary judgment motion. Thus, it is necessary to determine whether Dr. Biggs' testimony and report are admissible prior to considering Defendants' motion for summary judgment.

---

**1.** Although it is this. Courts practice to address in limine motions on evidentiary matters at trial, where a proffer may be obtained, because the evidentiary matters raised by Defendants relate to the instant motion for summary judgment, the Court will address them herein.

■ The Federal Rules of Evidence allow admission of all evidence that is relevant, provided that its probative value is not outweighed by its prejudicial impact. *See* FED. R. EVID. 401, 403. With respect to expert testimony, Rule 702 provides that: "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The Supreme Court has held that the Federal Rules assign the trial judge the role of "gatekeeper" with respect to testimony, both scientific and otherwise, based on "technical" and "other specialized" knowledge. *See Kumho Tire v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Thus, prior to admitting expert testimony, the trial judge must ensure that expert testimony is both reliable and relevant. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589–91, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

The *Daubert* Court "outlined specific factors, such as testing, peer review, error rates, and 'acceptability' in the relevant scientific community, some or all of which might prove helpful in determining the reliability of a particular scientific 'theory or technique.' " *Kumho,* 526 U.S. at 141, 119 S.Ct. 1167 (citing *Daubert,* 509 U.S. at 593–94, 113 S.Ct. 2786). However, the *Daubert* test is "flexible" and the "list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* Accordingly, Dr. Biggs' testimony is admissible if he is both qualified as an expert and his testimony is reliable, relevant and will assist the trier of fact.

With these standards in mind, the Court will address Defendants' motion to exclude Plaintiff's proposed expert testimony.

Defendants contend that Dr. Biggs' testimony and report are inadmissible because (1) Dr. Biggs is not qualified as an expert with respect to the matters set forth in his report

and with respect to the matters on which he proposes to testify; (2) the proffered testimony does not require scientific, technical or specialized knowledge; and (3) Dr. Biggs' testimony will not assist the jury in understanding the ultimate issue in the case. *See* Def. Mem. of Law at 27.

Plaintiff's expert, Dr. Biggs, is a psychologist engaged in private practice and practice at the Nia Center, which specializes in the treatment of "persons who have been victims of race discrimination [and] harassment as well as mental health issues related to people of color." Biggs Aff. ¶ 10. Dr. Biggs proposes to testify on a number of issues, including: (1) the sufficiency of plaintiff's medical leave request documents; (2) the results of a comparison of Plaintiff's documentation of her absence from work with that submitted by similarly situated Caucasian employees of the Dormitory of the State of New York ("DASNY"); (3) his opinion regarding the above comparison—specifically that the disparate treatment illustrated by Biggs' comparison of documentation submitted by Caucasian and African–American employees supports an inference of discrimination; (4) the reasonableness of a human resources action in response to documentation submitted concerning an employee's mental health diagnosis; (5) the effect of Pugliese's, DASNY's decision-maker, admitted anger and disappointment upon reading Plaintiff's medical documentation for her leave, which was based in part on "the strong stress reaction [Plaintiff was] experiencing as a result of her work situation and the racial discrimination she is experiencing there" on his subsequent behavior; (6) his opinion of whether Pugliese's actions were reasonable; (7) his opinion that Pugliese's emotional reaction to documentation submitted by Plaintiff and his subsequent actions coupled with DASNY's failure to reject documentation proffered by Caucasian employees evidences a retaliatory state of mind that may have caused Pugliese to act in a retaliatory manner. *See* Pl. Mem. of Law at ¶ 18. The Court will address these proffers and Defendants' objections *in seriatim.*

■ First, Dr. Biggs proposes to testify regarding a comparison of documents Plain-

tiff provided to support her request for medical leave, which were rejected, and similar documents provided by DASNY employees who were granted personal leave and the reasonableness of Defendants' response to Plaintiff's submission (proffers 1–4). Defendants first object to this testimony on the grounds that the sufficiency of medical documentation, the comparison of this documentation, and the conclusion based on this documentation that Plaintiff was treated disparately are outside of Dr. Biggs' area of expertise.

Dr. Biggs is a practicing psychologist involved in both private practice and work at the Nia Center. As previously noted, the Nia Center "specializes in treating persons who have been victims of race discrimination." Biggs Aff. ¶ 10. In both areas of practice, Dr. Biggs is required to submit documentation to insurance companies and employers regarding "the ability or inability to work of an individual employee ... [due to] a mental health problem." *Id.* at ¶¶ 25, 27. Thus, Dr. Biggs has extensive practical experience in preparing and submitting the type of documentation at issue in this case. Dr. Biggs also has extensive practical experience, both through his private practice and his work at the Nia Center, in treating patients who suffer from psychological problems arising from racial discrimination including stress reactions and other psychological conditions that Plaintiff allegedly suffers from. *See* Biggs Aff. ¶ 30.

The Second Circuit endorses a liberal interpretation of Rule 702's requirement that an expert be sufficiently qualified to testify insofar as it has allowed experts without formal training to testify based on "extensive practical experience." *See McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1043 (2d Cir. 1995); *see also Mancuso v. Consolidated Edison Co. of New York, Inc.,* 967 F.Supp. 1437, 1443 (S.D.N.Y.1997). Thus, because Dr. Biggs' testimony has a "reliable basis in knowledge and experience," *Daubert,* 509 U.S. at 598, 113 S.Ct. 2786, he is competent to testify as an expert with regards to Plaintiff's documentation insofar as he can explain the psychological conditions described therein and opine on the sufficiency of the submission insofar as his opinion is based on the content of submissions he himself has made.[2]

■ As the *Mancuso* Court noted, the Second Circuit's liberal interpretation of Rule 702 does not render the requirement that an expert be qualified to testify "a nullity." 907 F.Supp. at 1442. Dr. Biggs does not have either formal training or practical experience in the area of human resources nor has he written any articles or given any lectures on this subject. Dr. Biggs is not familiar with the specific procedures of DASNY with respect to either the review of documentation submitted to excuse work absences or the termination of employees based on failure to submit adequate documentation. Thus, Dr. Biggs does not appear to have any specialized knowledge, either as a result of formal training or practical experience, regarding human resource department's procedures or responses to medical documentation supporting job absence. Therefore, Dr. Biggs is not qualified to testify with respect to the reasonableness of DASNY's internal response to Plaintiff's medical documentation.[3]

**2.** Note that the factors outlined in *Daubert* are not particularly helpful in analyzing this portion of Dr. Biggs' testimony. Dr. Biggs' opinion is based on his experiences as a psychologist rather than an analysis of data or preparing studies. Dr. Biggs is merely stating that as a psychologist, he has submitted documentation similar to that submitted on behalf of Plaintiff, and this documentation was accepted without question.

**3.** The Court notes that Dr. Biggs' experience in submitting documentation to employers is limited to the patient side. Biggs Aff. ¶ 44. Although Dr. Biggs states that to his knowledge, no documentation submitted by himself or his colleagues at the Nia Center has ever been rejected as insufficient, Biggs Aff. ¶ 28, this provides limited information and is an insufficient basis on which to form a reliable opinion on human resources practice. To the Court's knowledge, Dr. Biggs has not participated in any human resources decisions and he has no knowledge regarding the internal review of medical documentation he has submitted. Thus, while Dr. Biggs is competent to testify that documentation he has submitted that is similar to Plaintiff's has not been rejected, he is not competent to testify as to the internal processes or the reasonableness of such processes in a human resources department.

The Court finds that Dr. Biggs is competent to testify as an expert with regards to the comparison of Plaintiff's submission of medical documentation and that of other DASNY employees. Again, Dr. Biggs testimony will be limited to the submissions themselves and the proposed testimony regarding the reasonableness of DASNY and Pugliese's response to the submissions will be excluded.

FED. R. EVID. 703 "gives district courts discretion 'to determine whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony.'" *Mancuso*, 967 F.Supp. at 1441 (quoting *Boucher v. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir.1996)). The Court acknowledges that as a psychologist, Dr. Biggs' interpretation of medical documentation involving non-psychological problems has limited utility. However, despite its limitations, Dr. Biggs' experience both as a psychologist and through submitting documentation to employers provide helpful information, and thus the testimony will "assist the trier of fact," within the meaning of Rule 702. Because the limitations in this area do not undermine the overall utility or reliability of Dr. Biggs' testimony, they represent matters of weight rather than admissibility, which can adequately be explored on cross-examination. *Mancuso*, 967 F.Supp. at 1441 ("Other contentions that the assumptions are unfounded go to the weight not admissibility of testimony.").

■ Finally, the Court is not persuaded that Dr. Biggs is competent to render an opinion that his finding that Plaintiff was treated disparately indicates that racial discrimination "may have been" a motivating factor in the rejection of Plaintiff's documentation. Biggs Aff. ¶ 66. First, the Court notes that the conclusion that racial discrimination may have been a motivating factor in Defendants' actions requires, at least in part, an assumption that DASNY's human resources department acted unreasonably. As the Court stated, this assumption is beyond the scope of Dr. Biggs' competence and expertise. In rendering this opinion, Dr. Biggs is relying on his determination that Plaintiff's documentation was sufficient and that any differences in the manner DASNY reviewed

these submissions compared to submissions of Caucasian employees supports a finding of improper racial discrimination or retaliation. The jury is perfectly capable of coming to the same conclusions based on the underlying facts of this case. The fact that Dr. Biggs has experience treating victims of racial discrimination does not make his conclusion more reliable than that of the jury's. Thus, Dr. Biggs' specialized knowledge will not assist the jury on this issue as Rule 702 requires.

Defendants next object to Dr. Biggs' testimony on the grounds that the sufficiency of Plaintiff's submissions and the comparison of Plaintiff's medical documentation with that of other DASNY employees is not based on specialized knowledge within the meaning of Rule 702. Defendants contend that the medical documentation submitted by Plaintiff and other DASNY employees could easily be interpreted by a layperson and thus, the testimony does not "assist the trier of fact," as required by Rule 702. With regards to the sufficiency of Plaintiff's submissions (as compared to submissions Dr. Biggs has authored) this argument is unpersuasive. The jury does not have the specialized knowledge and practical experience of a working psychologist—thus they will have no standard on which to evaluate the sufficiency of Plaintiff's submissions. Similarly, the jury will not have a basis to evaluate the sufficiency of the medical documentation of other employees, nor will it have the knowledge necessary to make a helpful comparison of the submissions. Because Plaintiff's claims rely, in part, on the assertion that her documentation was treated differently from that of Caucasian employees, the information provided by Dr. Biggs is helpful and will assist the jury in determining whether Defendants' rejection of Plaintiff's medical documentation supports a claim of race-based discrimination or retaliation.

■ Dr. Biggs also proposes to testify regarding the likely effect of Pugliese's anger and disappointment upon reading Plaintiff's medical documentation for her leave, which was based in part on "the strong stress reaction [Plaintiff was] experiencing as a result of her work situation and the racial

discrimination she is experiencing there" on his subsequent behavior; his opinion of whether Pugliese's actions were reasonable; and his ultimate conclusion that this emotional reaction (coupled with the disparate treatment indicated by the comparison of medical) evidences that Pugliese had a retaliatory state of mind. For the reasons discussed above, the Court finds that Dr. Biggs is not competent to testify to the reasonableness of Pugliese's actions from a human resource perspective. The Court will next consider the admissibility of Dr. Biggs' testimony regarding Pugliese.

Dr. Biggs has never examined Pugliese. Plaintiff argues that Dr. Biggs is competent to testify on Pugliese's state of mind because "[a]s a licensed psychologist, [Dr. Biggs] deals with human emotions on a daily basis, and in assessing and predicting the impact of these emotions upon individual behavior." This general professional experience, however, does not render Dr. Biggs competent to testify to Pugliese's specific response in this particular instance. Dr. Biggs may be competent to testify, on a general level, that admitted anger or disappointment may result in a certain type of behavior, however, Plaintiff has failed to provide a reliable basis for Dr. Biggs to render a specific opinion with respect to the emotional reaction of an individual he has not examined. *See, e.g., Bragdon v. Abbott,* 524 U.S. 624, 653, 118 S.Ct. 2196, 2212, 141 L.Ed.2d 540 ("[E]xpert testimony must have a traceable, analytical basis in objective fact....") (citing *General Electric Co. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)). Thus, Dr. Biggs' opinion that Pugliese's admitted anger and disappointment may have interfered with his professional judgment and objectivity with regards to Plaintiff is not admissible. Not only is there insufficient basis for this line of testimony, as Defendants argue, this portion of Dr. Biggs' testimony will not "assist the trier of fact." The jury is perfectly capable of making a connection between Pugliese's anger and disappointment and his review of Plaintiff's medical documentation regarding whether Pugliese's emotional reaction tainted his objectivity. Accordingly, the Court will exclude portions of Dr. Biggs' testimony relating to the Pugliese's emotional reaction as well as the potential effect of Pugliese's reaction on his review of Plaintiff's medical documentation and his ultimate decision to terminate Plaintiff for job abandonment.

In sum, the Court finds Dr. Biggs is competent to testify regarding both the sufficiency of Plaintiff's medical documentation in comparison to documentation he has submitted and the comparison of this documentation with that submitted by other DASNY employees. The proffered testimony regarding the reasonableness of DASNY's response to this documentation, the ultimate conclusion that DASNY's response may have been racially discriminatory, and all testimony relating to Pugliese's specific emotional reaction and any effect of this reaction on his behavior, is outside the Dr. Biggs' area of expertise, and thus, is inadmissible under both FED. R. EVID. 702 and *Daubert.*

### C. Standard For Summary Judgment

The standard for summary judgment in employment discrimination cases is well-settled and need not be restated here. This Court has set forth the appropriate standard to be applied in numerous published decisions, *see, e.g., Roman v. Cornell Univ.,* 53 F.Supp.2d 223, 232–33 (N.D.N.Y.1999); *Phipps v. New York State Dep't of Labor,* 53 F.Supp.2d 551 (N.D.N.Y.1999); *Riley v. Town of Bethlehem,* 44 F.Supp.2d 451, 458 (N.D.N.Y.1999), and will apply the same standard discussed in these cases to Defendants' motion for summary judgment.

With these standards in mind, the Court will now address the Defendants' motion for summary judgment.

### D. Abandonment of Claims

Defendants' motion for summary judgment encompassed Plaintiff's claims against DASNY for race discrimination under Title VII, 42 U.S.C. § 2000e *et. seq.,* and N.Y. EXEC. LAW § 296 (Human Rights Law "HRL") and Plaintiff's claims for violations of her right to free speech an association pursuant to the First and Fourteenth Amendments of the Constitution under 42 U.S.C. § 1983 and 42 U.S.C. § 1988 (discrimination on the basis of political party). Defendants' also move for

summary judgment on Plaintiff's HRL claims and 42 U.S.C. § 1983 and § 1988 claims against the nine individual defendants. The memorandum of law supporting Defendants' motion addressed all of Plaintiff's claims; Defendants clearly moved for summary judgment on all claims. *See* Def. Mot. For Summ. J. Plaintiff's opposition papers, however, reflected a new "focus," Pl. Mem. of Law at 3, and thus, argued only Plaintiff's retaliation claim. The Court notes, however, that the same allegations and events underlying Plaintiff's retaliation claims support her discrimination claims. Similarly, Plaintiff's opposition papers significantly narrowed the basis of the original retaliation and discrimination claims.

Plaintiff's Complaint alleged numerous adverse employment actions to support her Title VII claims, a number of these allegations survived Defendants' initial motion to dismiss.[4] Defendants addressed each of these allegations in its motion for summary judgment and provided facially legitimate, nondiscriminatory explanations for its actions. Plaintiff's opposition papers did not address all of the original allegations; rather Plaintiff's response focused on Defendants DAS-NY and Pugliese's rejection of the medical documentation Plaintiff submitted to excuse her lengthy absence from work and her subsequent termination due to job abandonment.[5] Similarly, Plaintiff specifically controverts only the facts in Defendants' Rule 7.1(a)(3) Statement that pertain to her retaliation claims.[6] Plaintiff's lack of opposition to portions of Defendants' motion for summary judgment relating to her claim of discrimina-

---

**4.** These included: (1) on April 6, 1995, DASNY rescinded Plaintiff's March 24, 1995 assignment to a "permanent, full-time" position in the personnel department of DASNY; (2) In November, 1995 Plaintiff was denied an appointment to the position of administrative assistant; (3) in November, 1995 Plaintiff was assigned to a small work area crowded with machinery; (4) in December, 1995 Plaintiff was denied a position as a communication associate; and (5) in January, 1997, Defendants rejected a letter from Plaintiff's psychologist as inadequate justification for Plaintiff's three-month absence from work and terminated Plaintiff based on job abandonment.

**5.** The Court notes that Plaintiff's opposition papers did discuss certain facts that tend to support her claim for discrimination with respect to the April 6, 1995 rescission of her "permanent full-time position" in the personnel department of DASNY and her 7.1(a)(3) Statement controverts some facts related to this event. However, the opposition papers did not allege sufficient facts to defeat Defendants' motion for summary judgment on this claim. It is well-settled that claims for discrimination on the basis of race are analyzed using the rubric that the Supreme Court set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which will be discussed above. Assuming, arguendo, that Plaintiff could establish a prima facie case that the rescission of her assignment was discriminatory, the burden shifts to the Defendants to articulate a legitimate, nondiscriminatory reason for their action. *See id.* Defendants clearly satisfy this burden. Defendants contend that the initial reassignment was procedurally irregular for a number of reasons. First, there was no full-time position to assign Plaintiff too. *See, e.g.,* Gehr Aff. ¶ 38. Plaintiff admits that she was not given details of the assignment, a job description, or a salary quote. Second, at

the time of the reassignment, DASNY was under strict budgetary guidelines that prohibited the creation of new positions without departmental need. *See, e.g.,* Holmes Aff. ¶ 30, Ex. C. According to DASNY, it did not have a business need for a full-time employee in personnel, *see* Gehr Aff. ¶ 45, thus it could not create a position for Plaintiff. Third, DASNY's internal policies as well as the pertinent Collective Bargaining Agreement, require posting of all new job positions. The posting provides notice to all potential applicants that a position is open. *See, e.g.,* Hunt Aff. ¶¶ 8–13. The position Plaintiff was assigned to was never posted. Thus, according to DASNY, even if there had been departmental need that justified creating a new position in personnel, Plaintiff could not simply have been assigned to that position, rather, the position would have to be posted and Plaintiff would have had to apply for it. In her opposition papers, Plaintiff does not controvert the validity of the above reasons, nor does Plaintiff offer factual evidence that supports a finding that discrimination was a motivating factor behind the rescission of the reassignment. The affidavit of Rinaldi creates factual questions regarding the assignment but does not negate Defendants' proffered business reasons for the rescission. Plaintiff therefore has failed to provide a reasonable basis on which a rational jury could find that discrimination was a motivating factor behind the rescission of her reassignment, thus she has failed to satisfy the third prong of the *McDonnell Douglas* analysis. Accordingly, if Plaintiff had not abandoned this claim, it would have been dismissed on its merits.

**6.** Specifically, Plaintiff does not controvert facts set out in Defendants' 7.1(a)(3) statement regarding the administrative assistant position (¶¶ 56–64); the communications associate position (¶¶ 65–71); her other requests for advancement (¶¶ 14–24); or her office assignment (¶¶ 48–55).

tion on the basis of political party affiliation and racial discrimination and/or retaliation based on adverse employment actions other than the Fifth allegation in the Complaint, rejection of her medical documentation and termination, indicates that Plaintiff consents to the granting of summary judgment with respect to these portions of her Complaint or that she has otherwise abandoned these claims. *See Frink Am., Inc. v. Champion Road Mach. Ltd.*, 48 F.Supp.2d 198, 209 (N.D.N.Y.1999) (citing *Anti–Monopoly, Inc., v. Hasbro, Inc.*, 958 F.Supp. 895, 907, n. 11 (S.D.N.Y.) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue."), *aff'd*, 130 F.3d 1101 (2d Cir.1997), *cert. denied*, —— U.S. ——, 119 S.Ct. 48, 142 L.Ed.2d 37 (1998)). Accordingly, these claims are dismissed.

### E. Title VII Claims

As previously noted, the same facts and events support Plaintiff's claims of race-based discrimination and retaliation. Additionally, the burden shifting analysis required to support the claims is virtually identical, therefore, the Court will consider Plaintiff's discrimination claim under Title VII, insofar as it relates to the rejection of her medical documentation and her termination.

The burden shifting rubric for analyzing Title VII discrimination claims, set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is well-settled. The same burden shifting analysis applies to Title VII retaliation claims. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 764 (2d Cir.1998). Plaintiff initially has the *de minimis* burden of presenting a prima facie case of discrimination. If this burden is satisfied, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reason" for the complained of action. *Id.* at 802, 93 S.Ct. 1817. To satisfy this intermediate burden, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory [or retaliatory] animus." *Texas Dep't of Community Affairs v. Bur-*

*dine*, 450 U.S. 248, 257, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The defendant's burden of production is not a demanding one, *see Fisher v. Vassar College*, 114 F.3d 1332, 1335–36 (2d Cir.1997), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998), and the ultimate burden of persuasion always remains with the plaintiff. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

If the defendant offers a legitimate, non discriminatory explanation for its employment decision, the burden shifts back to the plaintiff, who must be "afforded a fair opportunity to show that petitioner's stated reason for [the adverse action] was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817. The plaintiff's burden to prove that the defendant's proffered reason is "pretextual" merges with the ultimate burden of proving intentional discrimination. *St. Mary's*, 509 U.S. at 516–17, 113 S.Ct. 2742. To satisfy this burden, Plaintiff need not show that defendant's proffered reason was false in addition to proving discrimination; rather, Plaintiff must prove that a motivating reason behind the defendant's action was discrimination. *See Fields v. New York State Office of Mental Retardation and Developmental Disabilities*, 115 F.3d 116, 120 (2d Cir.1997). In other words, a plaintiff in a Title VII action who does not prove discrimination was a motivating factor in the adverse employment decision may not succeed merely by proving that defendant's proffered explanation is false; however, a plaintiff will succeed "by proving discriminatory motivation without proving the proffered explanation is false." *See Renz v. Grey Adver., Inc.*, 135 F.3d 217, 222 n. 3 (2d Cir.1997) (citing *Fields*, 115 F.3d at 121).

### 1. Plaintiff's Retaliation Claims

Title VII provides that it "shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [such employee] has opposed any practice made an unlawful practice by this subchapter." 42 U.S.C. § 2000e–3(a). Plaintiff contends that DAS-NY violated this provision by retaliating

against her for complaining about and filing charges concerning the racial discrimination she claims to have suffered at DASNY. Specifically, Plaintiff contends that DASNY and individual Defendant Pugliese, retaliated against her by: (1) rejecting documentation from Plaintiff's psychologist which stated that Plaintiff was unable to work in part, due to a stress reaction resulting from perceived racial discrimination; (2) charging Plaintiff with job abandonment(based upon a judgment that the documentation explaining her absence was insufficient); (3) failing to arrange for an independent physician to evaluate Plaintiff; and (4) ultimately terminating Plaintiff.

In the context of a motion for summary judgment, the plaintiff must first demonstrate a prima facie case of retaliation, after which the defendant has the burden of pointing to evidence that there was a legitimate, non retaliatory reason for the complained of action. If the defendant meets its burden, the plaintiff must demonstrate that there is sufficient evidence on which a reasonable jury could find that despite the proffered explanation, Defendants' action was motivated at least in part by impermissible retaliation. *See Richardson v. New York Dep't of Correctional Serv.*, 180 F.3d 426, 443 (2d Cir.1999)(internal citations omitted).

■ To establish a prima facie case of retaliation a plaintiff must show (1) participation in a protected activity that is known to the defendant, (2) an employment decision or action disadvantaging the plaintiff, and (3) a causal connection between the protected activity and the adverse decision. *See Quinn*, 159 F.3d at 768 (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.

1995)); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir.1996).

■ Defendants do not dispute that Plaintiff has established the first two elements of a retaliation claim. Defendants argue, however, that Plaintiff cannot establish a causal connection between her protected activity[7] and her termination. To withstand summary judgment plaintiff need only show that there is a genuine issue of material fact surrounding the existence of "a retaliatory motive [that] play[ed] a part in the adverse employment actions", i.e., that retaliation was a motivating factor. *See Padilla v. Metro–North Commuter R.R.*, 92 F.3d 117, 122 (2d Cir.1996) (bracket in original) (quoting *Dominic v. Consolidated Edison Co.*, 822 F.2d 1249, 1254 (2d Cir.1987)), *cert. denied*, 520 U.S. 1274, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997).

Plaintiff has provided evidence that suggests that Pugliese, the individual who terminated her, was "angry" and "disappointed" to learn of her claim of racial discrimination.[8] Subsequent to this reaction, Pugliese requested that Plaintiff submit further medical documentation, and eventually found that Plaintiff had abandoned her job. Dr. Biggs will testify both that Plaintiff's documentation was sufficient[9] and that, in his opinion, Plaintiff's documentation was treated differently from that of similarly situated Caucasians to justify her three-month absence from work.[10] Moreover, Plaintiff has submitted evidence that Defendants did not investigate Plaintiff's medical claims—insofar as she was not evaluated by an independent psychologist and Pugliese apparently made no effort to determine what ailments Plaintiff actually suffered from.[11] Although, as De-

---

7. Plaintiff filed a Complaint the Department of Human Rights ("DHR")/ Equal Employment Opportunity Commission ("EEOC") in August 1995. McKnight filed a second DHR/EEOC Complaint in January 1996.

8. Defendants interpret Pugliese's deposition statements differently from Plaintiff, however, their characterization is not dispositive, it is the role of the jury to decide what these statements meant and what role, if any, Pugliese's emotions played in his decision.

9. Insofar as he may compare it to documents he has prepared that have been accepted by employers.

10. Defendants contend that Plaintiff was not similarly situated to the individuals Dr. Biggs compares her to. Defendants are free to develop these differences and question Dr. Biggs' comparison on cross-examination, however, the difference do not render the comparison inadmissible.

11. In addition to the stress reaction, the letter form Dr. Hyne said Plaintiff was suffering from

fendants note, the lack of temporal proximity between Plaintiff's complaints of discrimination and her eventual termination tend to negate a finding of retaliation, this alone is insufficient to defeat Plaintiff's claims. The Second Circuit has consistently held that the timing of an adverse employment action may be circumstantial evidence of retaliation, *see, e.g., McCullough v. Wyandanch Free School District,* 187 F.3d 272, 280 (2d Cir.1999) (citing *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995)) (First Amendment context); *Baranowski v. Cornell Univ. Soil, Crop & Atmospherical Science Dep't,* 1991 WL 85828, *5 (N.D.N.Y. May 17, 1991) (dismissing claim based on lack of temporal proximity and other deficiencies), it has not, however, found that the inverse is true and thus, temporal proximity is not a necessary element of a retaliation claim. Keeping in mind that on a summary judgment motion the Court "is not to weigh evidence, or assess the credibility of witnesses, or resolve issues of fact," *Rodriguez v. City of New York,* 72 F.3d 1051, 1061 (2d Cir.1995) (collecting cases), and must draw all factual inferences and view all evidence in the light most favorable to the non-moving party, *id.,* the Court finds that a rational trier of fact could find that Plaintiff has established the necessary nexus between her complaints of racial discrimination and her eventual termination to establish a prima facie case.

Under the *McDonnell Douglas* paradigm, once Plaintiff establishes her prima facie case, the burden shifts to Defendants to articulate a legitimate non-discriminatory reason for its actions. Here, Defendants assert that Plaintiff was terminated for job abandonment. This is sufficient to satisfy its minimal burden under *McDonnell Douglas.* Thus, the onus reverts to Plaintiff to demonstrate that discrimination is the more likely reason for the adverse employment action she suffered. *See St. Mary's,* 509 U.S. at 515, 113 S.Ct. 2742. Defendants contend that Plaintiff cannot "hope to prove that her

termination was pretextual." Def. Rep. Mem. of Law at 7. To support this argument, Defendants first argue that the undisputed facts set out in their Rule 7.1(a)(3) Statement (¶¶ 72–90 and ¶¶ 93–96) prove that Plaintiff's termination was not discriminatory. These facts, however, do not preclude Plaintiff from establishing that retaliation was a motivating factor in her termination. The facts merely chronicle Defendants actions, they do not explain the motivations behind these actions or preclude a finding that Defendants' motivations were impermissible.

Second, Defendants argue that Plaintiff cannot establish that her discharge was retaliatory because "she does not contend that she was incapable of returning to work in January, 1997. Instead, she offers the opinion of Dr. Biggs. that 'an individual' with her diagnosis might be unable to return to work." Def. Rep. Mem. of Law at 7. Although a finding that Plaintiff could have returned to work at this time would support Defendants' allegation that Plaintiff abandoned her job, this argument is not dispositive at this juncture, and in fact, the question of whether Plaintiff could have returned to work is itself a material issue of fact which precludes summary judgment.[12]

Again, the Court notes that on a motion for summary judgment all evidence must be viewed in the light most favorable to the non-moving party. Although Defendants' articulated explanations for their actions that appear to be legitimate and non discriminatory, a reasonable trier of fact could infer from the facts before this Court that retaliation played a part in Defendants' decision to scrutinize the medical documentation submitted by Plaintiff and/or Defendants' decision to terminate Plaintiff for job abandonment. Accordingly, summary judgment is inappropriate.

**2. Discrimination Claims**

■ To satisfy the initial *de minimis* burden of proving a prima facie case of dis-

---

essential hypertension and allergic rhinitis—Pugliese did not know the symptoms of these ailments when he rejected Plaintiff's documentation. *See* Pugliese Dep. at pp. 165–167.

**12.** Defendants contends that the fact that Plaintiff worked as an Albany County Legislator while

absent from DASNY is dispositive on this issue. However, Plaintiff purportedly could not return to work, in part, due to a stress reaction induced by alleged racial discrimination she was subjected to at DASNY. This may explain how Plaintiff was able to work at one position while remaining unable to return to DASNY.

crimination under Title VII, Plaintiff must establish (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment decision; and (4) that the adverse decision took place under circumstances giving rise to an inference of discrimination. *See, e.g., Brennan v. Metropolitan Opera Assoc., Inc.,* 192 F.3d 310 (2d Cir.1999). Plaintiff has clearly satisfied the first three elements of the prima facie case. Defendants contend that Plaintiff cannot establish either an inference of discrimination or show that in light of Defendants' proffered legitimate non-discriminatory reasons for its actions, or satisfy her burden of persuasion such that a reasonable jury could find that racial discrimination was a motivating factor behind the scrutiny of her medical documentation or her termination. As noted previously, the *McDonnell Douglas* burden shifting analysis applies to both claims and, in this case, the same evidence applies to both claims. Thus, in light of the above analysis, viewing the evidence in the light most favorable to the Plaintiff, the Court finds that a reasonable trier of fact could conclude that unlawful racial discrimination played a part in the challenged decisions. Accordingly, summary judgment is inappropriate.

### F. Plaintiff's Claims against Individual Defendants

#### 1. Political Party Discrimination Claims

Defendants move to dismiss Plaintiff's 42 U.S.C. § 1983 ("Section 1983") and 42 U.S.C. § 1988 ("Section 1988") claims against the nine individual Defendants named in Plaintiff's Complaint.

As discussed above, Plaintiff abandoned all claims based on discrimination and retaliation on the basis of political party affiliation. Significantly, Plaintiff's opposition papers did not specifically address these claims against the individual Defendants. Accordingly, Defendants' motion for summary judgment is granted with respect to these claims.

#### 2. New York Executive law § 296

Defendants next move for summary judgment on Plaintiff's discrimination and retaliation claims, pursuant to N.Y. EXEC. LAW § 296, against the nine individual Defendants.

Although the scope of the liability of individual defendants under the HRL is unclear,[13] Plaintiff has alleged sufficient facts for a reasonable jury to find that Pugliese and Gehr are individually liable for discrimination and or retaliation. On the facts before this Court, it appears that both Pugliese and Gehr actually participated in the review of Plaintiff's medical documentation and her termination for job abandonment. It also appears that both individual Defendants had sufficient authority within DASNY to "do more than carry out personnel decisions made by others." *See Patrowich,* 63 N.Y.2d at 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984). In other words, both Defendants appear to have had the authority to question

---

13. As the Southern District of New York recently noted in *Hicks v. IBM,* 44 F.Supp.2d 593, 599 (S.D.N.Y.1999) the scope of individual liability under New York Executive Law § 296 is not settled. The New York Court of Appeals has held that "a corporate employee is not subject to individual liability as an employer under the Human Rights Law if he is not shown to have an ownership interest or any power to do more than carry out personnel decisions made by others." *See Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 660, 473 N.E.2d 11, 12 (1984). In *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir.1995) the Second Circuit subsequently distinguished *Patrowich,* and held that an individual defendant without an ownership interest or analogous power could be held liable under Section 296 if the defendant actually participated in conduct that gave rise to the discrimination claim. Thus, the Second Circuit denied a motion to dismiss when the plaintiff alleged that each defendant participated in the discrimination and created a hostile work environment. *See id.* Subsequent to the *Tomka* decision, some New York Courts have found that individual defendants must do more than actually participate to be liable. *See, e.g., Trovato v. Air Express Int'l,* 238 A.D.2d 333, 334, 655 N.Y.S.2d 656 (2d Dep't.1997) (holding that there is no individual liability for employees who are not "employers or employee-owners or those with specified authority). Other New York Courts have adopted the holding of *Tomka." See, e.g., Steadman v. Sinclair,* 223 A.D.2d 392, 636 N.Y.S.2d 325 (1st Dep't 1996); *Peck v. Sony Music Corp.,* 221 A.D.2d 157, 632 N.Y.S.2d 963 (1st Dep't 1995).

Plaintiff's medical documentation (as evidenced by the fact that both did) and initiate termination proceedings.[14]

Plaintiff has not alleged that any of the individual Defendants, other than Felix Pugliese and Marilyn Gehr,[15] actually participated in the review and rejection of her medical documentation or her ultimate termination on the grounds of job abandonment. Thus, Plaintiff has both abandoned her claims against the seven remaining individual Defendants (Plaintiff's opposition papers did not address her claims against the individual Defendants) and failed to provide sufficient evidence on which a rational trier of fact could find the remaining Defendants liable under N.Y. EXEC. LAW § 296. Accordingly, Defendants' motion for summary judgment on Plaintiff's Section 296 claims against Defendants John L. Buono, Paul J. Burgdorf, Samuel R. Davidson, Theodore A. Holmes, Donald H. McDowell, Douglas H. Van Vleck and Woodie G. Williams [16] is granted and the claims are dismissed.

### III. Conclusion

Summary judgment is GRANTED in part and DENIED in part. Plaintiff's Section 1983 and Section 1988 claims for discrimination and retaliation based on political party affiliation are dismissed in their entirety. Defendants' motion for summary judgment on Plaintiff's remaining claims under N.Y. EXEC. LAW § 296 against Defendants John L. Buono, Paul J. Burgdorf, Samuel R. Davidson, Theodore A. Holmes, Donald H. McDowell, Douglas H. Van Vleck and Woodie G. Williams is granted and the claims are dismissed in their entirety. Plaintiff's Title VII discrimination and retaliation claims against DASNY survive as do Plaintiff's N.Y. EXEC. LAW § 296 Claims against Felix Pugliese and Marilyn Gehr.

**14.** The Court is not aware of the specific procedures DASNY supervisors must follow to terminate an employee. Information regarding the scope of Pugliese and Gehr's independent authority to terminate employees will be relevant to the ultimate determination of liability.

**15.** Defendants contend that "only the actions and intent of Mr. Pugliese are at issue in Ms. McKnight's retaliatory discharge claim," Def.

Defendants' motion to exclude the expert testimony of Dr. Biggs is GRANTED in part and DENIED in part. Dr. Biggs may testify regarding (1) the sufficiency of Plaintiff's medical documentation, insofar as it is compared to documentation he has prepared and submitted and (2) his comparison of Plaintiff's medical documentation to the documentation of other DASNY's employees. Dr. Biggs' testimony regarding (1) his conclusion that unlawful retaliation may have played a part in the review of Plaintiff's medical documentation; (2) the reasonableness of DASNY's human resources department and Pugliese's response to Plaintiff's medical documentation; and (3) Pugliese's emotional reaction to Plaintiff's medical documentation and any effect of this emotional reaction on Pugliese's actions, will be excluded.

**IT IS SO ORDERED.**

Rep. Mem. of Law at 4 n. 3. According to Plaintiff, however, Gehr was "responsible for bringing the review of [Plaintiff's medical documentation] to Mr. Pugliese." Pl. Mem. of Law at 12.

**16.** Williams has not appeared in this action, however because the remaining allegations do not allege any individual action by Williams, the claims against him are dismissed.